## GRAMMIER–DISMUKES CO. v. PAYTON.
### (No. 1889.)

Court of Civil Appeals of Texas. Beaumont.
Dec. 3, 1929.

Rehearing Denied Dec. 11, 1929.

F. J. & C. T. Duff and Lamar Cecil, all of Beaumont, for appellant.

Kitching & Kenna, of Beaumont, for appellee.

WALKER, J. This was a suit by appellee against appellant for damages to his automobile suffered as a result of a collision with appellant's ambulance and for loss of rental value while the automobile was being repaired. Transcontinental Insurance Company intervened, praying for judgment on subrogation for any amount that appellee might recover as damages to his automobile. The trial was to the court without a jury, with judgment in appellee's favor against appellant for $582.25 as damages to his automobile, which sum was awarded over to the insurance company, and for $160 for loss of rental value.

■■ On this appeal appellant's complaints are: (a) The court erred in not sustaining, as a matter of law, its plea of contributory negligence; and (b) the finding that it was guilty of negligence in operating its ambulance at a speed of 40 to 45 miles per hour was contrary to and against the provisions of article 791 of the Penal Code of the state. We overrule both of these contentions. The trial court filed the following conclusions of fact:

"I find that on or about the 5th day of February, 1928, the plaintiff's automobile, a Dodge Deluxe Sedan, was being driven and operated on Titsingh Avenue within the corporate limits of the City of Port Arthur, an incorporated city in Jefferson County, Texas, going in a Southern direction at a rate of speed of about 15 or 16 miles per hour; that said automobile was being driven by plaintiff's agent at said time and that said agent and employee of the defendant was driving said automobile on his right hand side of said Titsingh Avenue; that Titsingh Avenue and Ninth Street cross each other at right angles within the corporate limits of said City of Port Arthur and that said agent and employee of the plaintiff looked straight ahead at the time of entering said intersection of said Streets but did not look either to the left or the right.

"I find that the defendant's ambulance was at said time being driven by the defendant's agents and employees for the defendant and in the furtherance of its affairs and at the time were acting within the scope of their authority and within the course of their employment for the defendant; that the defendant's employees were driving said ambulance at a rate of speed at about 40 or 45 miles an hour within the corporate limits of the City of Port Arthur and as the said ambulance driven by the said defendant's agents and employees approached the intersection of said Titsingh Avenue and Ninth Street the same collided with the automobile owned by the plaintiff and operated by his said employee as above stated.

"I further find that said collision occurred about 9 or 10 o'clock on the morning of February 5th, 1928, at which time the atmosphere was dense with fog and the vision of the drivers of both plaintiff and defendant's automobiles were impaired by said fog.

"I further find that the employees in charge of the defendant's ambulance did not sound any horn or give any other audible signal to warn persons of the approach of said ambulance at such high and rapid rate of speed as the same approached said intersection of Ninth and Titsingh Avenue and that the employee of the plaintiff in charge of his said automobile did not hear said ambulance approaching and did not see the same until the car in which he was riding was struck thereby.

"I further find that the plaintiff's said automobile arrived at said intersection of said streets prior to the time of the arrival of said ambulance and that the rear end of plaintiff's automobile was about the center of Ninth Street at the time the defend-

ant's ambulance collided with the same; that the front end of the defendant's ambulance struck the rear right hand part of the plaintiff's automobile at about the right hind wheel thereof.

"I further find that the agents and employees of the defendant in charge of its ambulance were guilty of negligence in driving its said ambulance at a rate of speed in excess of that permitted by law to-wit: about 40 or 45 miles per hour within the corporate limits of the City of Port Arthur; that said agents and employees in charge of said ambulance were further guilty of negligence in failing to sound any horn or other audible signal on said ambulance to warn the plaintiff's said employee of the approaching ambulance.

"I further find that said agents and employees of the defendant were guilty of negligence in driving said ambulance at a rate of speed too fast and dangerous considering the circumstances and place of the collision and that said employees in charge of said ambulance did not have the same under proper control at said time in order to avoid said collision.

"I further find that the view of the drivers of both automobiles was obstructed by houses erected at the corner of the blocks at the intersection of said streets; that said houses were built close up to the streets and obstructed the view of persons traveling on either side until they were within a few feet of the intersection of said streets.

"I further find that the plaintiff's agent and employee in charge of said automobile was not guilty of negligence in driving the same upon the intersection of said streets at said time."

These conclusions have support in the testimony.

Appellee's witness Wilson testified as follows: "I was driving down the paved street and the ambulance was coming down the shell street which crossed the paved street. The rear end of my car was hit by the ambulance on the right side of my car. I did not hear the ambulance. I was not drunk and I was not drinking. I do not drink. I am not hard of hearing. The reason that I did not see the ambulance was that I could not see it. A house had me blocked on the corner and it was kind of foggy and I couldn't see anything."

He further testified: "I was just about half way out in the street at the time of the collision. The back of my car was about half way, and the front part was over half way across the Ninth Street."

George Allen testified as follows: " * * * And so this boy was coming from the church house on his way back to the stand and I was standing on the corner. He was traveling about 12 or 13 miles an hour. He wasn't but about a block from the church house. The ambulance was coming down Ninth Street about fifty miles an hour. I heard it blow the siren way down the road but when he got about two blocks from Titsingh I didn't hear no siren at all. So I got up on the step to see who was in the ambulance and just about that time this back end of this boy's car was about half way across the street when the ambulance hit him, hit his rear wheel, knocked him up on the house and turned the car over."

The witness George Allen further testified: "There were no stop signs or anything of that kind on either of those streets, that was in the City of Port Arthur. There is not much traffic on Ninth and Titsingh. It is well builtup, a good many houses there. Houses sit on each side of the street right on the corner. It was foggy that morning. You could see about a block from you. It was about 10:30 or 11:00 o'clock that morning. The houses on that corner are jam up to the street, right on the corner, just like the Dago Store was. A man coming down Titsingh Street could not see very far up Ninth Street before he got into Ninth Street, he had to get right up on the corner. A person driving the way that Wilson was coming, would have to get right out into Ninth Street before he could see what was coming down Ninth Street to Titsingh, the same situation would exist. The ambulance was making about 50 miles an hour, going down Ninth Street, going pretty fast, down a dirt street."

The witness testified on cross-examination as follows: "This man when he was struck had come more than half way across the street. The front end of his car was more than half way. I did not see him turn to the right or left or stop or do anything at all before the accident. He just drove right straight out into the street about 12 or 13 miles an hour and was going at that speed when he was hit. I did not see him jump or look to his right or look over his shoulders or anything like that before he was hit. He never made a move any way at all as I know of, I didn't see it. When I last heard the siren the ambulance was about three blocks away, coming back."

On the issue that appellant was guilty of negligence in operating its ambulance at a speed of 40 to 45 miles per hour, the testimony showed without contradiction that at the time of the collision the ambulance was responding to an emergency call.

Article 789 of the Penal Code of Texas provides that any person who shall operate a motor vehicle upon the public highways of Texas at a rate of speed in excess of 35 miles per hour, or who shall operate a motor vehicle within the corporate limits of an incorporated city or town, or within or through any town or village not incorporated, at a greater rate of speed than 20 miles per hour, shall be fined not less than $5 nor more than $200.

Article 790 of the Penal Code of Texas provides that no one operating a motor vehicle shall pass any other motor vehicle, person, or thing on any public highway of this state at such rate of speed as to endanger the life or limb of any person or the safety of any property. Article 791 of the Penal Code of Texas reads as follows: "The two preceding articles shall not apply to fire patrols or motor vehicles operated by the fire department of any city, town or village responding to calls, nor to police patrols, ambulances or physicians responding to emergency calls."

As we understand appellant's position, it contends that since its ambulance was on an emergency call, the issue of negligence in the rate of speed could not arise against it. This contention is not sound. The law simply exempts it from the arbitrary speed of 20 miles per hour, but it was still under the duty of exercising ordinary care, and in the rate of speed the court convicted it of failing to exercise ordinary care. However, this proposition must be denied, regardless of its abstract merits, since the court convicted appellant of negligence on other grounds sufficient to support the judgment.

Judgment of the trial court having support, it is our order that the same be in all things affirmed.