Montalto and another, Respondents, vs. Fond du Lac County and others, Appellants. [Two cases.]

*March 8—April 3, 1956.*

For the appellants there was a brief by *D. V. W. Beckwith* of Madison, and *Jerold E. Murphy* and *Eugene F. McEssey,* both of Fond du Lac, attorneys, and *William L. McCusker* of Madison of counsel, and oral argument by *Mr. Beckwith* and *Mr. McCusker.*

For the respondents there was a brief and oral argument by *Glen D. Kusche* of Sun Prairie, and *Frederick F. Hillyer* of Madison.

MARTIN, J. Appellants raise several questions on the merits. First, it is contended that the evidence does not sustain the jury's finding of causal negligence against Rozek.

Sec. 85.10 (14), Stats., defines "authorized emergency vehicles" as:

"Vehicles of the fire department, fire patrol, police vehicles, conservation wardens' vehicles, foresters' trucks, privately owned motor vehicles being used by any deputy state fire marshal, personnel of a full-time or part-time fire department and members of a volunteer fire department while en route to a fire or on an emergency call pursuant to orders of their chief or other commanding officer, such emergency vehicles of municipal, county, or state departments or public service corporations and such ambulances as are so designated or authorized by local authorities."

Sec. 85.06 (14) (a), Stats., provides:

"Any authorized emergency vehicle may be equipped with flashing, oscillating, or rotating red lights to warn drivers and

pedestrians to yield the right of way when making an emergency run on official business."

Sec. 85.12 (5), Stats., provides:

"The provisions of said sections regulating the movement, parking, and standing of vehicles shall not apply to authorized emergency vehicles while the operator of such vehicle is operating the same in an emergency in the necessary performance of public duties. This exemption shall not, however, protect the operator of any such vehicle from the consequence of a reckless disregard of the safety of others."

Sec. 85.40, Stats., which fixes speed restrictions, provides in sub. (5) thereof:

"The speed limitations set forth in this section shall not apply to authorized emergency vehicles when responding to emergency calls and the operators thereof sound audible signal by siren or exhaust whistle, and when such emergency vehicle is equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle. This provision shall not relieve the operator of an authorized emergency vehicle from the duty to operate with due regard for the safety of all persons using the highway, nor shall it protect the operator of any such vehicle from the consequence of a reckless disregard of the safety of others."

Appellants contend that at the time of the accident the ambulance was an emergency vehicle answering an emergency call and that, therefore, ordinary negligence on the part of Rozek was out of the case. The argument is based on the decision of several California cases.

In *Lucas v. Los Angeles* (1938), 10 Cal. (2d) 476, 75 Pac. (2d) 599, the court construed a speed-exemption statute applicable to authorized emergency vehicles which was similar to ours in that it did not exempt a driver from the duty to drive with "due regard" for the safety of others nor from the consequence of an "arbitrary exercise of the privileges"

therein granted. The California court held that the giving of the required warning signals satisfies the requirement to drive with "due regard;" that when the operator of an emergency vehicle gives the statutory notice of his approach he is not liable for injuries to another unless he has made an "arbitrary exercise" of the privileges which the law gives him. *Coltman v. Beverly Hills* (1940), 40 Cal. App. (2d) 570, 105 Pac. (2d) 153; and *Goldstein v. Rogers* (1949), 93 Cal. App. (2d) 201, 208 Pac. (2d) 719, are also cited.

Appellants argue that the same construction should be given to sec. 85.40 (5), Stats. We cannot agree. We deem the better rule to be that expressed in the following cases:

"The right of way given to public service vehicles and their exemption from traffic regulations, however, do not relieve their operators from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways. Although it is generally recognized that firemen driving to a fire, when the safety of lives and property are at stake, are in many instances duty bound to proceed at a rate of speed greater than that which any ordinary driver could justify and cannot be required to stop for red lights or other traffic signals, they must include in the care they are bound to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels them to create. They must keep in mind the speed at which their vehicle is traveling and the probable consequences of their disregard of traffic signals, and while they have a right to assume in the first instance that the operators of other vehicles will respect their right of way at an intersection they are warned by a red light flashing against them that other vehicles on the intersecting way are invited to proceed by a green light and may do so. Even if the driver of the other vehicle through negligence disregards their right of way they must still use due care to avoid a collision. The measure of their responsibility is due care under all the circumstances. [Citing cases.]" *Russell v. Nadeau* (1943), 139 Me. 286, 288, 29 Atl. (2d) 916.

"As we understand appellant's position, it contends that since its ambulance was on an emergency call, the issue of negligence in the rate of speed could not arise against it. This contention is not sound. The law simply exempts it from the arbitrary speed of 20 miles per hour, but it was still under the duty of exercising ordinary care, and in the rate of speed the court convicted it of failing to exercise ordinary care." *Grammier-Dismukes Co. v. Payton* (Tex. Civ. App. 1929), 22 S. W. (2d) 544, 546.

In our opinion, the giving of visible and audible warnings may or may not afford a reasonable opportunity to others to yield the right of way, depending upon the circumstances present. And the failure to afford that opportunity may be ordinary negligence or reckless disregard, depending on those circumstances.

To adopt the view of the appellants would mean that a lack of "due regard" would have to amount to a "reckless disregard" before an ambulance driver could be held negligent as to speed. That the legislature had no such intention is clear from the fact that sec. 85.40 (5), Stats., both requires that a driver operate with due regard for the safety of others and prohibits the exercise of his privilege with a reckless disregard for their safety. Significantly, the same phrase as to "reckless disregard" is also used in sec. 85.12 (5), but that as to "due regard" is not. If the legislature had intended the same standard of care to be applied in both sections, it would not have added the "due regard" requirement in sec. 85.40 (5).

A comparison of the two statutes plainly indicates that to be guilty of actionable negligence under sec. 85.12 (5), Stats., such as driving on the wrong side of the road and going through a stop light, the driver of an emergency vehicle on an emergency errand must be found guilty of reckless disregard of the safety of others. To be guilty of actionable negligence as to speed under sec. 85.40 (5), he

may be found guilty either of a lack of due regard for the safety of others, which is ordinary negligence, or of reckless disregard.

The questions submitted to the jury as to Rozek's negligence were:

"Question 1: At and about the time and place of the accident was the ambulance driver, Rozek, negligent:
"(a) In being on his left side of University avenue?
"Answer: No.
"(b) In driving at more than 25 miles an hour?
"Answer: Yes.
"(c) As to going through a red light?
"Answer: No.
"(d) As to lookout?
"Answer: Yes."

In its instructions the court stated:

"The Fond du Lac county ambulance undoubtedly was an authorized emergency vehicle, but it is for you, the jurors, to determine in your own minds, from the evidence, whether it was responding to an emergency call at the time of the accident."

It is obvious, from the jury's answer to (a) of question 1, that it had determined that the ambulance was responding to an emergency call at the time of the accident. Admittedly, the ambulance was on the wrong side of the street, and if its operation was not such as would entitle it to the exemption of sec. 85.12 (5), Stats., the answer to that question would have had to be "Yes."

While the evidence was somewhat conflicting as to whether or not the traffic light was against the ambulance, the jury found in its answer to question (c) that Rozek was not negligent in going through it.

It found him negligent, however, as to speed, in answering question (b). In instructing the jury the trial court read sec. 85.40 (5), Stats. We consider the evidence sufficient to support its finding in this regard.

Rozek testified that he was traveling an estimated 28 to 30 miles per hour as he approached the Park street intersection. Dr. Arthur Sonneland testified that he was in the second car east of the intersection in the lane nearest the center of University avenue, and he estimated the speed of the ambulance at between 40 and 50 miles per hour. Paul Macken was in the first car next to the center of Park street north of the intersection; he estimated its speed at 45 miles per hour and stated that there was no change in that speed as the ambulance approached the intersection. Thomas Barlet testified that he stopped his car on the inside lane on University avenue east of the intersection; there were cars in front of him stopped at the intersection and he was two or three car lengths behind the nearest one; the motorcycle passed him on the right and then cut across in front of him and entered the south lane; the ambulance followed the same course, traveling at a speed which he estimated at between 40 and 50 miles per hour.

Appellants argue that Rozek's speed could not have been great because skid marks proved he stopped his ambulance in a distance of 30½ feet. The skid marks were measured about an hour after the accident and traffic had been going both ways at the intersection during the interval. It was not proved that the marks were made by the ambulance, and this evidence was merely for the jury to consider together with all the other evidence as to speed.

It is undisputed that the traffic at this intersection at the time of the accident was heavy, and the evidence fully warranted the jury in finding that Rozek's speed, under the circumstances then existing, was a violation of his duty to drive with due regard for the safety of others. It was his duty to travel at a speed no greater than would allow him to afford other persons using the street a reasonable opportunity to avoid a collision.

Rozek was also found negligent as to lookout. Appellants argue that, even though lookout is not included in the exemptions of sec. 85.12 (5), Stats., his lookout must be measured against a standard less than that of ordinary care because, being permitted to exceed the speed limit, he could not maintain as efficient a lookout as is possible when driving at the statutory speed. The argument is untenable. In our opinion, a driver must maintain an efficient lookout regardless of his speed. Indeed, if his speed is greater than the statutory limit, it is incumbent upon him to maintain a sharper lookout simply because he will have less time in which to react to any hazard that may arise in his path.

Rozek did not see the children until he was ten feet from them and it was too late to avoid them. He testified that he entered the south half of University avenue about 125 feet east of the intersection; that he had a clear view ahead of him and saw the safety island but did not see the children. The officer on the motorcycle, in whose path Rozek followed, saw the safety island and the children at the time he turned into the south lane. That being so, the jury could well believe that Rozek could and should have seen the children at the time he entered the south lane. Had he done so, he would have been able to avoid them. The causal connection between the accident and his failure as to lookout is clear. If Rozek was confronted with an emergency when he saw the children, it was an emergency created by his own negligence.

There was other evidence which we will discuss later, which tended to prove that Rozek turned from the right into the left side of the street at a distance between 45 and 60 feet east of the intersection. The jury could conclude on the basis of this evidence together with that of his speed and the size of his vehicle (21 feet long), that Rozek had no opportunity to make such a lookout as would have enabled him to avoid the children.

The verdict included questions on the negligence of the children as follows:

"(a) As to lookout?
"Answer: No.
"(b) As to hearing a siren on the ambulance?
"Answer: Yes.
"(c) As to leaving the safety zone and attempting to cross the south lane of University avenue?
"Answer: No."

It is appellants' position that the children were negligent in all three respects as a matter of law.

The evidence shows that the children had been instructed about and had a certain knowledge of emergency vehicles. The motorcycle officer testified that the children watched him go by; he made a particular observation as to that because he was concerned for their safety. The distance between the motorcycle and the ambulance, however, was variously estimated at from one-half block to two or three blocks; and there is nothing in the record to indicate that the children's knowledge or experience was such as would charge them with the duty of anticipating that an ambulance would follow the motorcycle, or at such a distance. The testimony of several witnesses, including Mrs. Sonneland and Mrs. Schneiders, was to the effect that after the motorcycle passed they saw the older girl look to the right and to the left before taking her sister's hand and starting to cross. There was evidence from which the jury could infer that at the time the children made their observation the ambulance was not in the south lane of travel and was not visible to them. The witness Barlet testified that there were two cars stopped in the lane of traffic ahead of him and that he was two or three car lengths behind the second car. The ambulance passed on his right and cut in front of him, entering the south half of University avenue at a distance which the jury could have

concluded was three or four car lengths, 45 to 60 feet, east of the intersection. And from the fact that a number of cars were stopped in between the safety island and the point at which the ambulance passed the Barlet car on its right, it was a justifiable inference that it was not in the children's view when they made their observation.

The jury was also warranted in finding the children not negligent as to leaving the safety island and proceeding into the south lane. As pointed out above, there was no evidence that the children should have anticipated that an ambulance would follow the motorcycle. Having looked to their left and the ambulance not then being visible, it cannot be said that they knew or should have known of the danger in leaving the safety island.

Appellants contend that the children were negligent as a matter of law in failing to yield the right of way, basing their argument on the provisions of sec. 85.06 (14) (a), Stats. Even if this section creates a right of way in emergency vehicles over pedestrians—a question it is not necessary to decide—under the circumstances here Rozek had forfeited any right of way through his negligence as to speed. In any event, a finding as to the children's failure to yield the right of way would involve the same acts as would constitute negligence in leaving the safety island. Appellants requested the trial court to submit this question to the jury and the court properly refused to do so. As stated in *Kramer v. Chicago, M., St. P. & P. R. Co.* (1937), 226 Wis. 118, 132, 276 N. W. 113:

"The dual submission of virtually the same issue, and having the jury return two findings based on the same delinquency, unduly emphasized the significance of that lapse of duty."

Appellants ask this court to hold as a matter of law that the negligence of the children was at least equal to that of Rozek.

Their negligence was not of the same kind and character as Rozek's. Furthermore, we would feel more than our usual reluctance to change the apportionment made by a jury where the negligence of children is to be compared to that of an adult. See *Hanson v. Binder* (1952), 260 Wis. 464, 50 N. W. (2d) 676. Appellants cite cases in which the injured party stepped out into the danger from a place of concealment, which fact would necessarily have a relationship to the driver's ability to anticipate the hazard. That is not the situation here. The children were as visible to Rozek when he crossed into the south half of the street as they were to the motorcycle officer from that same point. And it may be presumed that if he had seen them, realizing they were children, he would have slowed his vehicle just as he did previous thereto when he noticed a car in an intersection.

Several issues are raised by appellants as grounds for a new trial. First, it is contended that either the court or the jury should have answered the question whether Rozek was operating an authorized emergency vehicle at the time of the accident. They argue that there was no dispute in the evidence on this and the court should have answered the question and so advised the jury. We do not agree. While the evidence was undisputed that the call Rozek was answering was generally emergency in nature, the evidence as to the situation presented to his mind was such as would call for the drawing of inferences by the jury. He testified he was told that the patient was an emergency, her condition was suspected to be bulbar-type polio; her head was packed in ice, she was unconscious and very red in the face; she was unaccompanied. He further stated that he asked for an escort through Madison because it was customary to do so; that he did not stop for any red lights but slowed down at other intersections, once almost coming to a stop; that if he had slowed down and come to a stop before entering the intersection in question the time he would have lost would

have been only "a matter of seconds." On this evidence it was for the jury to decide whether the situation presented to his mind was such as would, under all the circumstances present, require him to operate his vehicle as he did at and just prior to the accident.

The trial court instructed the jury that driving on the wrong side of the street, speed in excess of the statutory limit, and going through a red light would be negligence for an ordinary driver, but that all three of these prohibitions as to ordinary vehicles "are subject to qualification, and may not apply at all, in the case of an authorized emergency vehicle, when it is responding to an emergency call and sounding its siren or exhaust whistle and displaying the required lights." The court further instructed:

"In order for you to find that the ambulance was being driven in an emergency or responding to an emergency call, at the time of the accident, you must be satisfied that the defendant, Harry Rozek, believed, and as an ordinarily reasonable and prudent man, had the right to believe, under the circumstances then existing, that the health and safety of the patient in the ambulance required him to ignore those regulations pertaining to the speed and the movement of vehicles on the highway as set forth in the statutes."

It is argued that the jury, having answered "No" to the first and third subdivisions of question 1 (being on the wrong side of the street and going through a red light), obviously was of the opinion that Rozek was operating an authorized emergency vehicle in response to an emergency call, and thus should have answered the questions with respect to whether he was operating his emergency vehicle in a reckless disregard for the safety of others, but that such questions were left unanswered. This was adequately covered in the court's instructions:

"If you do not find the ambulance driver negligent in any of the respects covered in questions 1 (a), (b), and (c), as

I have explained them to you, then you are faced, neverthe-
less, with the question whether the ambulance driver acted
in reckless disregard of the safety of others: (1) In being on
the left side of the street; (2) in going faster than 25 miles
per hour; (3) as to going through a red light.

"In other words, if you have determined that the am-
bulance was responding to an emergency call and was sound-
ing its siren or exhaust whistle, then its driver could not be
guilty of ordinary negligence in any of the matters set out in
questions 1 (a), (b), and (c); *but he might or might not
be guilty of a reckless disregard of the safety of others,* which
is something more than and different from ordinary negli-
gence. ['Reckless disregard of the safety of others' defined.]"
(Emphasis ours.)

The statement that "if you have determined that the am-
bulance was responding to an emergency call and was sound-
ing its siren or exhaust whistle, then its driver could not be
guilty of ordinary negligence in any of the matters set out in
questions 1 (a), (b), and (c)" was erroneous in so far as
it is contrary to our holding that under sec. 85.40 (5), Stats.,
the driver of an emergency vehicle may be negligent in failing
to exercise due care as to speed; but we consider that the
reading of the statute cured any error in the statement and
the jury was not misled thereby, as appears from the verdict
which it returned. In any event, if any prejudice did result
it was to the respondents rather than the appellants.

Appellants allege error in the trial court's failure to in-
struct as to provisions of the statutes referred to in secs. 85.12
(5) and 85.40 (5) which were read to the jury. As pointed
out above, the court did instruct that an ordinary driver
would be negligent as to speed, driving on the left side of the
street, and going through a red light and that these prohibi-
tions did not apply to an emergency vehicle. Appellants
complain that the instructions given were incomplete in that
they did not cover all the rules of the road relating to
pedestrian and vehicular traffic that were referred to in the

sections read. It is our opinion that the instructions given were clear and concise and it would only have served to confuse the jury if they had been amplified in the manner suggested.

Other errors in instructions are assigned which it is unnecessary to discuss here since the arguments on which they are based have been dealt with elsewhere in this opinion.

It is urged that the damages are excessive. The jury fixed the damages of Paulette at $6,500. She was rendered unconscious by the impact; there was swelling and contusion in the region of her right eye and forehead; fracture of the left forearm, and a puncture wound on the upper surface of the arm; she was hospitalized until December 11, 1952. At the time of the trial, about two and one-half years later, there was still some bowing of the forearm and a bump on her forehead, which were demonstrated to the jury. Although Paulette did not testify to experiencing any pain, it is obvious from her injuries that she must have suffered considerable pain, and she was entitled to an award therefor. We do not consider the damages excessive.

Gloria's damages were assessed at $30,000. She was ten years old at the time of the accident. She was rendered unconscious and upon examination her injuries were found to be: A compound, depressed skull fracture along the left eye socket; fracture of the left collarbone; laceration of the left eardrum; fracture of the first rib and laceration in the lumbar region. She was hospitalized until December 24, 1952. Her permanent disabilities are: Scar and deformity in the left anterior temporal region; partial paralysis of facial muscles involving the left forehead and eye, resulting in an inability to completely close the eye; headaches once or twice a month which will probably continue for the rest of her life; reduction in her intellectual capacity, as disclosed by considerably lower grades in school than she previously received. Con-

sidering Gloria's age, the scar and other permanent disabilities, we do not consider the award excessive.

Appellants moved the court for a mistrial on the ground that a prejudicial newspaper editorial was read by the jury on the day this case went to the jury, but the motion was denied. It is claimed that the editorial reflected prejudice in the damages awarded to the respondents and in the finding of negligent speed on the part of Rozek.

As stated above, the evidence amply supports the finding of the jury that Rozek was negligent as to speed. There is no indication that the jury substituted the editorial for evidence on that issue. We have held that the awards are consistent with the injuries sustained. We find in the verdict no evidence of passion or prejudice.

It is unfortunate that the editorial appeared on the day the case was given to the jury, but the statements made therein, while erroneous, were as much in appellants' favor as against them:

" 'Naturally, emergency cases must be rushed to a medical center. An ambulance under these conditions is entitled to the absolute right of way. . . . An "emergency vehicle" should be on an "emergency errand" before it becomes exempt from laws designed for public safety.' "

Apparently the trial court concluded the jury was not influenced thereby, and there is nothing in the verdict to indicate that it was.

Respondents have filed a motion for review of the trial court's determination that the judgment of the father, $2,337.25 for medical expenses and the loss of Gloria's services, should be reduced by 20 per cent, that being the degree of negligence found against both of his daughters. It is conceded that at common law the contributory negligence of the child defeated the parent's right of recovery just as it defeated that of the child. Since the adoption of the

Comparative Negligence Law it has been the practice of our courts to reduce the recovery of the parent by whatever percentage the child is found contributorily negligent. We see no reason why a tort-feasor should be held 100 per cent liable for damages resulting to the parent from injuries to which he contributed only partially.

*By the Court.*—Judgments affirmed.