MAYOR AND CITY COUNCIL OF BALTIMORE
ET AL. *v.* FIRE INSURANCE SALVAGE
CORPS OF BALTIMORE ET AL.

(Four Appeals in One Record)

[No. 117, September Term, 1958.]

*Decided February 16, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and OPPENHEIMER, J., Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*David J. Preller, Assistant City Solicitor of Baltimore,* with whom was *Hugo A. Ricciuti, Acting City Solicitor,* on the brief, for the appellants.

*John H. Mudd,* with whom were *Rignal W. Baldwin* and *Semmes, Bowen & Semmes* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

On April 18, 1953, at about 5:45 p. m., a vehicle of the Baltimore City Fire Department (Fire Department) collided with a vehicle of the Fire Insurance Salvage Corps (Salvage Corps) at the intersection of Caroline and Baltimore Streets, Baltimore, Maryland, while both were responding to the same fire alarm. The Fire Department vehicle was being operated by Edgar L. Cannon; the one belonging to the Salvage Corps by James P. Gaskill. Both vehicles were extensively damaged, and James P. Gaskill, together with Michael I. Polek, a corpsman who was standing on the rear of the Salvage

Corps vehicle, were injured as a result of the collision. Suits were filed against Cannon by the Salvage Corps for damage to its vehicle, and by Gaskill and Polek for personal injuries. The Mayor & City Council of Baltimore brought suit against the Salvage Corps for damage to the Fire Department vehicle. These cases were consolidated and tried before the court, without a jury, Judge Tucker presiding, who found that the collision was caused solely by the negligence of the Fire Department driver. Verdicts were entered against Cannon in favor of the Salvage Corps in the agreed amount of the damage, $4,168.23, and in favor of Polek and Gaskill in the amount of $5,000 each for their personal injuries, and in favor of the Salvage Corps, as defendant, in the suit brought by the Mayor & City Council for damage to its vehicle. New trial motions filed by Cannon and the Mayor & City Council were denied, and on April 14, 1958, the judgments were made absolute, from which judgments this appeal has been taken.

At the time of the collision, it was rainy. The Fire Department engine was proceeding north on Caroline Street, and the Salvage Corps vehicle had been proceeding west on Baltimore Street, but was making a right turn to proceed north on Caroline Street. Both vehicles were ringing their bells, sounding their sirens and flashing their warning lights.

At the trial below, it was stipulated that both vehicles were authorized emergency vehicles and entitled to the rights given to such vehicles by the motor vehicle laws of the state.

The pertinent provisions of the Code (1957) Article 66½ are:

> "§ 214. The prima facie speed limitations and provisions relative to right of way stopping at through highways, rules of the road, traffic-control devices and signals set forth in this article shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to

drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.

"§ 183. (b) *Emergency vehicles—Stopping.*— The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop signal or stop sign. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal.

"§ 235. (c) [After Sections (a) and (b) provide that other vehicles, upon the immediate approach of authorized emergency vehicles giving audible sound signals, shall yield the right of way, proceed to a position parallel to the right hand curb and stop, etc.] *Effect of section on emergency vehicles.*— This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

The evidence was, for the most part, conflicting. However, the driver of the Fire Department engine admitted that he did not see the Salvage Corps' vehicle before the collision. Each side contended that the other's vehicle was being driven through a red light at the time of the accident. The Fire Department claimed that its engine was in the intersection first and the Salvage Corps' vehicle ran into the right side of the engine, which caused it to veer to the left coming to a stop partly inside of a store on the west side of Caroline Street. The Salvage Corps, on the other hand, contended its vehicle was the first in the intersection and, while it was attempting to make a right turn, the Fire Department engine ran into the left rear side of its vehicle pushing the rear forward to the north, which caused the vehicle to be in a diagonal position across Caroline Street, and then the engine hit its vehicle again on the left side, this time near the front.

It would unduly prolong this opinion to set forth all of the testimony relating to the respective claims. The trial judge, in a memorandum opinion, thoroughly and logically analysed the same, and made certain findings of fact. He found that the Salvage Corps' vehicle was the first to enter the intersection; that it did so upon a green light while traveling at a moderate and reasonable rate of speed, and was making a right turn into Caroline Street; that the Fire Department engine entered the intersection upon a red light and ran into the left side of the Salvage Corps' vehicle; that the driver of the Fire Department's engine either (according to his testimony) failed to look to his right after he was at a point 25 feet south of the south building line of Baltimore Street, or (according to other testimony) he was traveling 20 to 25 miles an hour and was unable to stop because of the weight and speed of his vehicle. After a careful examination of the evidence, we are unable to say that any of the findings of fact made by the learned trial court are clearly erroneous. Maryland Rule 886.

With the facts established, it only remains to see if they warranted his conclusion that the collision was caused solely by the negligence of Cannon. It will be noticed that Section 214, *supra,* states the speed regulations, provisions of statutes relative to right of way stopping at through highways, rules of the road and traffic-control devices shall not apply to authorized emergency vehicles when responding to emergency calls and the driver is giving audible signals; but this provision shall not relieve such driver from the duty to drive "with due regard for the safety of all persons using the street, nor shall it protect the driver * * * from the consequence of a reckless disregard of the safety of others." Section 183 (b) relieves drivers of such vehicles, when responding to emergency calls, from the necessity of stopping at red or stop signals provided they "slow down as necèssary for safety" and "proceed cautiously past such red or stop signal."

The appellant earnestly urges us to adopt what may be called the California rule. In interpreting statutes somewhat similar to ours, that State has held that if the audible signal be given, "speed, right of way, and all other 'rules of the

road' are out of the picture," and the driver cannot be held responsible for ordinary negligence, but only for "an arbitrary exercise of these privileges" (the words of the California statutes corresponding to "reckless disregard of the safety of others" in ours). *Lucas v. City of Los Angeles,* 75 P. 2d 599 (Cal., 1938); *Coltman v. City of Beverly Hills,* 105 P. 2d 153 (Cal., 1940).[1] However, we think the correct rule is that adopted by the Supreme Court of Wisconsin in *Montalto v. Fond du Lac County,* 76 N. W. 2d 279 (Wis., 1956). In that case the operation of an ambulance was involved and the Court construed statutes that were practically identical, if not identical, with ours. It rejected the California rule and said: "Appellants argue that the same construction [that given by the California Court] should be given to sec. 85.40 (5), Stats. We cannot agree. We deem the better rule to be that expressed in the following cases: [citing cases from Maine and Texas which will be named later]." The Court then held that the phrase in the statute "with due regard for the safety of all persons using the highway" created a liability in the defendants for "ordinary negligence" of the operator of the ambulance; and that the driver could also be guilty of actionable negligence if the evidence disclosed a "reckless disregard" of the safety of others. See also *Ruth v. Rhodes,* 185 P. 2d 304, 309, 310 (Ariz., 1947); *Russell v. Nadeau,* 29 A. 2d 916, 917 (Maine, 1943); *Grammier-Dismukes Co. v. Payton,* 22 S. W. 2d 544, 546 (Tex. Civ. App., 1929); 1 Blashfield, *Cyclopedia of Automobile Law and Practice,* Sec. 809; 2 Stevenson, *Law of Negligence in the Atlantic States,* Sec. 681, n. 2. Cf. *Baltimore Transit Co. v. Young,* 189 Md. 428, 56 A. 2d 140; *Sudbrook v. State,* 153 Md. 194, 139 A. 12, decided before the Acts of 1943; *Fink v. City of New York,* 132 N. Y. S. 2d 172 (Sup. Ct., 1954); *Farrell v. Fire Ins. Salvage Corps,* 179 N. Y. S. 477 (Sup. Ct., App. Div., 1919); *Miller v. City of Albany,* 287 N. Y. S. 889 (Sup. Ct., 1935); *Travis v. Collett,* 17

---

1. The appellant also cited the case of *Reilly v. City of Philadelphia,* 195 A. 897 (Pa., 1938), but there the statute created responsibility *only* for "reckless disregard" of the safety of others.

N. W. 2d 68 (Minn., 1944). We, therefore, hold that under a proper construction of Section 214, the provision that requires the operator of an authorized emergency vehicle to do so "with due regard for the safety of all persons using the street" renders him liable for ordinary negligence, namely, a failure to exercise reasonable care and diligence under the circumstances. And we think the same rule applies to Section 183 (b). *Travis v. Collett, supra,* at page 71.

In holding that operators of authorized emergency vehicles are liable for ordinary negligence under the statutes mentioned, we do not, of course, mean to state that their conduct in the operation of such vehicles is measured by exactly the same yardstick as the actions of the operators of conventional vehicles. The urgency of their missions demands that they respond to calls with celerity and as expeditiously as is reasonably possible. When giving audible signals, they are, within limitations, relieved from speed regulations, rules of the road and certain other provisions. It is generally recognized that firemen when going to a fire often drive at a rate of speed that could not be justified by the ordinary motorist. They are not required to stop for red lights or other stop signals, but may slow down and proceed cautiously through them. However, they are bound to exercise reasonable precautions against the extraordinary dangers of the situation that the proper performance of their duties compels them to create. When dealing with the operation of emergency vehicles, it is particularly appropriate to recognize that negligence and reasonable care are *relative* terms and their application depends upon the *situation* of the parties and the degree of care and vigilance which *circumstances* reasonably impose. Negligence and reasonable care derive their only significance from a factual background, and that background must contain evidence of circumstances which justify a legitimate inference that in the exercise of reasonable care and prudence injury could have been avoided. *Baltimore Transit Co. v. Prinz,* 215 Md. 398, 403, 137 A. 2d 700. We are dealing here with a situation that involves the operators of two emergency vehicles, each having all of the privileges granted to such operators and each having the same obligation to ex-

ercise such care and control as an ordinarily careful and prudent person would exercise under like circumstances.

This interpretation of the statutes makes it clear that the facts, without repeating them, justified Judge Tucker in concluding that the collision was caused solely by the negligence of Cannon.

The conclusion reached renders it unnecessary for us to consider that portion of Section 214 relating to a "reckless disregard of the safety of others"; so we express no opinion concerning the same at this time. The subject is dealt with in *Restatement, Torts,* Sec. 500. Notice particularly *Comment (g).* See also *Montalto v. Fond du Lac County, supra;* Stevenson, *op. cit.,* Sec. 681.

*Judgments affirmed, with costs.*