Clifford E. CLINE, Plaintiff–Appellant,

v.

Robert RABSON, The Police Department of the City of Loveland, a governmental entity, and The City of Loveland, a municipal corporation, Defendants–Appellees.

No. 91CA0844.

Colorado Court of Appeals,
Div. IV.

Aug. 27, 1992.

As Modified on Denial of Rehearing
Dec. 17, 1992.

Certiorari Granted and Judgment
Vacated July 26, 1993.*

Scott DeDolph, Fort Collins, for plaintiff-appellant.

Watson, Nathan & Bremer, P.C., J. Andrew Nathan, Joseph J. Fraser, III, Denver, for defendants-appellees.

Bruno, Bruno & Colin, P.C., Marc F. Colin, Denver, for amicus curiae Fraternal Order of Police Colorado State Lodge.

Opinion by Judge CRISWELL.

Plaintiff, Clifford E. Cline, appeals from the summary judgment dismissing his claims against defendants, the City of Loveland, its police department, and Robert Rabson, one of its police officers. We reverse.

In his complaint, plaintiff joined Rabson only in his official capacity and alleged that plaintiff had suffered serious bodily inju-

* Petition for Writ of Certiorari GRANTED and the judgment of the court of appeals is vacated. The case is remanded for reconsideration in light of *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993). EN BANC.

ries as a result of the negligent acts of Rabson, who, while attempting to overtake a speeding vehicle in his police cruiser, passed plaintiff's motorcycle so closely that the cruiser struck plaintiff's elbow. Plaintiff alleged that Rabson "failed to properly use and control his vehicle, failed to observe proper safety procedures in passing the plaintiff and/or improperly used the left turning lane."

In response to these allegations, defendants claimed in their motion for summary judgment that they were immune from suit under the Colorado Governmental Immunity Act (the Immunity Act), § 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A), because plaintiff's injury occurred while Rabson was operating an emergency vehicle pursuant to the provisions of § 42–4–106, C.R.S. (1984 Repl.Vol. 17).

An evidentiary hearing was held upon the question whether Rabson's operation of his emergency vehicle complied with § 42–4–106(4), C.R.S. (1984 Repl.Vol. 17), which requires the driver of an emergency vehicle to "drive with due regard for the safety of others." Thereafter, the trial court dismissed plaintiff's complaint, finding that the evidence did not support his contention that Rabson operated his vehicle in a negligent manner. Hence, it concluded that the City was immune from suit.

### I.

Plaintiff first contends that the trial court erred in taking evidence and adopting findings of fact upon the immunity issue. We agree.

Section 24–10–108, C.R.S. (1988 Repl.Vol. 10A) provides that, if a public entity raises the issue of sovereign immunity before or immediately after commencement of discovery, "the court ... shall decide such issue on motion." The question presented, therefore, is whether this statute contemplates that, if resolution of the issue of the existence of immunity is dependent upon the resolution of a factual dispute, the trial court is empowered to resolve that dispute. We conclude that, in those instances, such as here, in which a disputed factual issue is presented, a court

cannot resolve that issue on a pre-trial basis.

There has been no previous opinion that directly addresses a court's authority under § 24–10–108. Nevertheless, previous decisions of this court have implicitly concluded that motions calling upon the courts to determine the immunity issue, whether filed under C.R.C.P. 12(b) or under C.R.C.P. 56, are to be determined by use of the same procedural standards that would otherwise apply to such motions.

Thus, in *Schlitters v. State*, 787 P.2d 656 (Colo.App.1989), in which a C.R.C.P. 12(b) motion to dismiss was based upon the assertion that a boulder falling upon a highway could not constitute a "dangerous condition" under § 24–10–106(1)(d), C.R.S. (1988 Repl.Vol. 10A), it was emphasized that, in evaluating such a motion:

> [T]he trial court must accept the facts of the complaint as true and determine whether under any theory of law, plaintiff is entitled to relief. If this standard [is] met, the motion to dismiss should be denied.

Similarly, in *Sierra v. Denver*, 730 P.2d 902 (Colo.App.1986), which also involved a motion under C.R.C.P. 12(b) to dismiss, we held that the trial court could not dismiss a claim, based upon sovereign immunity, because the allegations of plaintiff's complaint were sufficient to allow her to prove a set of circumstances in which immunity would not apply. *See also Zapp v. Kukuris*, 847 P.2d 150 (Colo.App.1992) (plaintiff's allegations were sufficient to withstand a C.R.C.P. 12(b) motion to dismiss that relied upon the defense of sovereign immunity).

Likewise, in *Moldovan v. State*, 829 P.2d 481 (Colo.App.1991), this court concluded that, if genuine issues of material fact respecting a state's violation of a statutory duty are presented, a trial court may not enter summary judgment grounded on sovereign immunity.

While none of these decisions have directly addressed the extent of a trial court's authority under § 24–10–108, they all reach what we consider to be the correct result.

It is to be noted that the statute's direction to decide the sovereign immunity issue "on motion" is applicable only if the issue is raised "prior to or immediately after the commencement of discovery." And, if raised at this time, discovery is to be suspended, "except any discovery necessary to decide the issue of sovereign immunity."

These provisions make it evident that the statute's underlying purpose is to require resolution of the immunity issue at an early stage in the proceedings, if the issue is raised at an appropriate time and it is otherwise possible to do so. It seeks to prevent the expenditure of public funds in defending upon the merits of a claim in those instances in which, because of a defendant's immunity, such defense need never be made.

Nothing within this underlying purpose, nor within the express language of the statute, however, reflects a legislative intent to require resolution of the immunity issue pursuant to a legal standard different from the standards that are used in resolving any other issue on a pre-trial basis. Its purpose is expedition, not usurpation of a jury's function. And, in those instances in which the General Assembly has intended a judge to exercise the jury's factfinding function, that intent has been clearly expressed. *See,* for example, § 13–21–115(4), C.R.S. (1991 Cum.Supp.) which specifically provides that, in an action against a landowner, "the judge shall determine whether plaintiff is a trespasser, a licensee, or an invitee," while the jury is to determine "issues of liability and damages."

Further, if, as here, the determination of the immunity issue would resolve factual issues upon which the claim on the merits depends, so that a decision on the immunity issue would also decide defendant's substantive liability, having the trial court act in the capacity of a pre-trial factfinder would be particularly inappropriate.

Under the Immunity Act, a public entity is immune from liability for injuries resulting from the operation of an emergency vehicle under § 42–4–106. Section 24–10–106, C.R.S. (1986 Repl.Vol. 10A). Yet, under § 42–4–106, while the driver of an emergency vehicle is exempted from complying with certain specified traffic regulations, the driver must still "drive with a due regard for the safety of all persons," and the statute does not protect him "from the consequences of his reckless disregard for the safety of others." Therefore, in instances in which the latter statute is applicable, the nature of the driver's actions will dictate not only the extent of the immunity granted by § 24–10–106, but it will also determine the underlying liability claim. Under these circumstances, we cannot ascribe to the General Assembly an intent to delegate to a judge the ultimate factfinding responsibility of the jury.

Hence, we conclude that, if a party raises the issue of sovereign immunity by filing a timely pre-trial motion under § 24–10–108, a trial court is bound to decide such motion using the same standard for disposition as would otherwise apply to such a pre-trial motion. If the motion is one for summary judgment, the court may not grant such motion if there exists for resolution a genuine issue of material fact. *See Sewell v. Public Service Co.,* 832 P.2d 994 (Colo.App.1991) (although existence of duty is a question of law for the court, if foreseeability of injury is subject to reasonable dispute, that issue is for the jury).

Here, the trial court did not limit itself to a consideration of the evidentiary materials submitted in support of, and in opposition to, the request for summary judgment. Instead, it conducted an evidentiary hearing and received testimony from witnesses. In addition, its determination that Rabson acted properly was reached after considering credibility issues in its capacity as a factfinder; that determination was not made as a judge acting on a matter of law.

Therefore, because the trial court applied the wrong legal standard in passing upon defendant's pre-trial motion, its judgment must be reversed and the cause remanded to it for its reconsideration.

## II.

Because the issue will arise on the trial court's reconsideration of defendant's mo-

tion, we also address plaintiff's assertion that § 42–4–106 abrogates governmental immunity if the driver of an emergency vehicle violates the simple negligence standard of ordinary care and that it is unnecessary, for this purpose, to establish that such a driver was guilty of reckless conduct. We also agree with this assertion.

Section 24–10–105, C.R.S. (1988 Repl.Vol. 10A) of the Immunity Act generally exempts public entities from liability in tort. However, § 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A) generally waives that immunity for injuries resulting from the operation of a vehicle owned by a public entity and operated by a public employee. Under this statute, however, immunity is not waived in those instances in which the injuries result from the operation of an emergency vehicle, if such vehicle is "operating within the provisions" of § 42–4–106(2) and (3), C.R.S. (1984 Repl.Vol. 17).

Section § 42–4–106(2) says:

The driver of an authorized emergency vehicle, when responding to an emergency call, or when in pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in this article. The driver of an authorized emergency vehicle may:

(a) Park or stand, irrespective of the provisions of this title;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be *necessary for safe operation;*

(c) Exceed the maximum speed limits so long as he does *not endanger life or property;*

(d) Disregard regulations governing directions of movement or turning in specified directions. (emphasis supplied)

Nevertheless, § 42–4–106(4) contains the proviso that:

The provisions of this section shall not relieve a driver of an authorized emergency vehicle from the duty to drive with *due regard for the safety of all persons,* nor shall such provisions protect the driver from the consequences of his *reckless disregard for the safety of others.* (emphasis supplied)

■ Defendants contend that the plain language of § 42–4–106(2) and (4) render a public entity immune from any liability for an injury caused by a driver of an authorized emergency vehicle unless the driver's behavior rises to the level of "reckless disregard." They further argue that the General Assembly's specific allowance for emergency vehicles to disregard specified traffic regulations necessarily implies, and is further evidence that, the standard of simple negligence is not intended to be applied to the actions of an emergency vehicle driver. We disagree.

Considering the provisions of § 42–4–106 in conjunction with the general provisions of the Immunity Act, we conclude that a public entity is not immune under these two statutes if the public employee fails to exercise "due regard for the safety" of others.

We reach this conclusion for two reasons.

■ First, § 42–4–106, while it authorizes the driver of an emergency vehicle to disregard certain traffic regulations, does not constitute a *carte blanche* grant of authority to disregard *all* such regulations. Thus, in order for the exception to the statutory waiver of immunity to apply, the traffic regulation giving rise to the claim must be one of those specified in § 42–4–106(2). *Sierra v. Denver, supra.*

Further, this statute also emphasizes that the disregard of these specific regulations is permitted only to the extent that it will not compromise "safe operation" or otherwise "endanger life or property." Section 42–4–106(2)(b) and (c). Indeed, this statute is specific in requiring the driver of an emergency vehicle "to drive with a due regard for the safety of all persons." Section 42–4–106(4). And, it is only if an emergency vehicle is being operated "within the provisions" of § 42–4–106 that the driver's employer is immune from liability for any injuries caused by that operation; if such operation violates § 42–4–106, immunity is waived. Section 24–10–106(1)(a).

Second, § 24–10–110(1)(b)(II), C.R.S. (1986 Repl.Vol. 10A) renders a public entity liable for all judgments rendered against one of its employees, based upon such employee's "act or omission ... when the public employee is operating an emergency vehicle within the provisions of section 42–4–106(2) and (3)," except in those instances in which the employee is guilty of "willful and wanton" conduct.

While "willful" conduct is conduct that may be qualitatively different from recklessness, recklessness and "wanton" conduct have frequently been determined to be equivalents. *See Coffman v. Godsoe,* 142 Colo. 575, 351 P.2d 808 (1960); *Fanstiel v. Wright,* 122 Colo. 451, 222 P.2d 1001 (1950).

Hence, if no recovery was possible under § 42–4–106 except for acts of recklessness, the provisions of § 24–10–110(1)(b)(II) would be both unnecessary and inexplicable.

Considering these two statutes together, therefore, requires the conclusion that, while § 42–4–106 allows the driver of an emergency vehicle to disregard specific traffic regulations, so that their violation cannot constitute negligence *per se,* its provisions do not relieve such a driver of the duty to use ordinary due care under all of the existing circumstances.

Other courts that have considered similar statutes have also concluded that their provisions do not relieve a driver from the duty to exercise ordinary due care. *See City of Baltimore v. Fire Insurance Salvage Corp.,* 219 Md. 75, 148 A.2d 444 (1959); *Johnson v. Brown,* 75 Nev. 437, 345 P.2d 754 (1959); *Montalto v. Fond Du Lac County,* 272 Wis. 552, 76 N.W.2d 279 (1956); *City of Kalamazoo v. Priest,* 331 Mich. 43, 49 N.W.2d 52 (1951). *But see Lucas v. City of Los Angeles,* 10 Cal.2d 476, 75 P.2d 599 (1938); *Grammier-Dismukes Co. v. Payton,* 22 S.W.2d 544 (Tex. Civ.App.1929).

In reaching this conclusion, we have considered the recent decision in *Zapp v. Kukuris, supra.* We recognize that both the language and decision in that case may appear to be inconsistent with the conclusion we reach here. The issue in *Zapp,* however, was whether § 42–4–106 created a duty upon the driver of an emergency vehicle to members of the public generally such that recovery could be had by a party struck by a vehicle being pursued by the emergency vehicle. In concluding that recovery was permissible under such circumstances, the *Zapp* court authorized such recovery only if the actions of the driver of the emergency vehicle were determined to be reckless.

However, the opinion in *Zapp* contains no indication that the issue addressed here was raised by the parties, and that opinion does not directly consider that issue. For these reasons, we do not consider *Zapp* dispositive and to the extent that the *Zapp* language may conflict with the conclusion reached here, we decline to follow *Zapp.*

Therefore, in reconsidering the question of the defendants' immunity on remand, the trial court should measure Rabson's conduct against the standard of ordinary care under all of the circumstances and enter summary judgment for defendants only if it determines that there is no genuine dispute upon any material fact and that no reasonable factfinder could determine that Rabson violated the duty of due care.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

JONES and DAVIDSON, JJ., concur.

## ON PETITION FOR REHEARING

Judge DAVIDSON, dissenting in part from the denial of petition for rehearing.

I would grant the petition for rehearing on Part I. I continue to agree, however, with the views expressed in Part II of that opinion.

I disagree with the holding that, when a public entity raises the issue of sovereign immunity in accordance with § 24–10–108, C.R.S. (1988 Repl.Vol. 10A), the trial court is precluded from taking evidence and adopting findings of fact. To the contrary, it is my opinion that in such circumstance the court is required to do so.

This conclusion is premised on the clear language of § 24–10–108, as applicable here, which provides:

> Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in [tort]. If a public entity raises the issue of sovereign immunity prior to or immediately after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion.

By this language, the General Assembly has limited the power of the court to proceed in any action in which there is sovereign immunity or until such issue is resolved. By doing so, I submit that the General Assembly has made sovereign immunity a matter of subject matter jurisdiction which must be determined before the action may advance.

Subject matter jurisdiction concerns the authority of the court to deal with the class of cases in which it renders judgment, *In re Application for Water Rights of Monaghan Farms, Inc.*, 807 P.2d 9 (Colo.1991), and relates to the nature of the claim and the relief sought. "The test of whether a court has subject matter jurisdiction over a particular controversy depends upon the competency of the court to determine controversies of the general class that are presented for its consideration." *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo.1991). *See People in Interest of Clinton*, 762 P.2d 1381 (Colo. 1988). A court's jurisdiction over the subject matter is derived from constitution or statute. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo. 1986).

The General Assembly made sovereign immunity a question of subject matter jurisdiction in 1986, when it amended the Governmental Immunity Act to provide that sovereign immunity is a bar to any action for injury in tort. Section 24–10–108. *See* Hearings on H.B. 1196 before the House State Affairs Committee, 55th General Assembly, 2nd Session (February 4, 1986).

Prior to those amendments, sovereign immunity was merely a defense to suit, *see* Colo.Sess.Laws 1971, ch. 323, § 24–10–108 at 1207, and as such, if it was not properly raised or pled by a public entity, it could be waived. *See City of Colorado Springs v. Gladin*, 198 Colo. 333, 599 P.2d 907 (1979); *Valdez v. City & County of Denver*, 764 P.2d 393 (Colo.App.1988).

Now, by the terms of § 24–10–108, unless a tort claim against a governmental entity specifically falls within an exception to sovereign immunity, *see* §§ 24–10–104, 24–10–105, 24–10–106, the court lacks authority to proceed with the case. *See Stone's Farm Supply, Inc. v. Deacon, supra*.

A challenge to the court's subject matter jurisdiction is appropriately made by the filing of a motion to dismiss pursuant to C.R.C.P. 12(b)(1). The court's ability to consider and decide questions of fact under such a motion depends upon the nature of that challenge. If the motion attacks the *sufficiency* of the allegation of jurisdiction contained in the complaint, then all of the factual allegations are presumed to be true and the motion can be granted only if a plaintiff has failed to allege an element necessary for subject matter jurisdiction. *See* C.R.C.P. 8(a)(1) (if the court is of limited jurisdiction, pleading must set forth statement of the grounds upon which the court's jurisdiction depends.) Furthermore, any defect in allegation of fact upon which the court's jurisdiction depends can be cured or supplied by amendment. *Francisco v. Cascade Investment Co.*, 29 Colo.App. 516, 486 P.2d 447 (Colo.App. 1971); *See also, Stuart v. Frederick R. Ross Investment Co.*, 773 P.2d 1107 (Colo. App.1988).

In contrast, regardless of the sufficiency of the allegations in the complaint, if the motion to dismiss attacks the court's *actual* authority of the court to proceed and to hear the merits of the claim, then the court has the power and the obligation to resolve any factual disputes regarding the existence of subject matter jurisdiction. *Guthrie v. Barda*, 188 Colo. 124, 533 P.2d 487 (1975). *See State ex rel. Danielson v.*

*Vickroy,* 627 P.2d 752 (Colo.1981); *David-son Chevrolet, Inc. v. City & County of Denver,* 138 Colo. 171, 330 P.2d 1116 (1958); *Isham v. Miller,* 80 Colo. 380, 252 P. 353 (1926) (whenever jurisdiction of a court depends upon a question of fact, that court may try that question). In determining a factual challenge to subject matter jurisdiction, the allegations in the complaint are *not* presumed to be true. Accordingly, the existence of disputed issues of material fact on the jurisdictional issue not only does not preclude the trial court from deciding the merits of a jurisdictional claim, it requires the court to do so by resolving the factual dispute. *See Guthrie v. Barda, supra; see also* C.R.C.P. 12(d).

It therefore follows that since a factual attack of the court's subject matter jurisdiction necessarily requires the trial court itself to resolve factual disputes related to that authority, such a challenge is not proper under C.R.C.P. 56 in which the trial court must deny a motion if there exist disputed issues of material fact. For the same reason, if the court considers factual matters outside the pleadings in resolving the factual dispute relating to the motion to dismiss for lack of subject matter jurisdiction, the motion is not converted into a motion for summary judgment. *See* C.R.C.P. 12(c).

This is buttressed by the fact that a motion for summary judgment is a determination on the merits of a claim. *See Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231 (Colo.1984); 5 R. Hardaway & S. Hyatt, *Colorado Civil Rules Annotated* § 56.1 (1985). Because a dispute over the court's subject matter jurisdiction should be determined *before* the court can reach the merits of the case, a challenge to subject matter jurisdiction is not properly made by the filing of a motion for summary judgment.

For the same reason, a challenge to actual subject matter jurisdiction should not be brought on a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). *See, e.g. Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884 (3rd Cir.1977) (a ruling on a motion to dismiss

for failure to state a claim results in a determination on the merits of a claim); *see also* 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1350 (1990).

In any event, and *regardless* of how the motion is denominated, an attack on subject matter jurisdiction should be treated procedurally by the court as a motion to dismiss under C.R.C.P. 12(b)(1) and, generally, should be promptly determined before the court proceeds further. This rule is particularly apt where sovereign immunity is raised because it is an immunity from suit, not merely from liability, and the purpose of the immunity is defeated if a ruling is postponed until trial. *See Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445 (6th Cir.1988); *Gervasio v. United States,* 627 F.Supp. 428 (N.D.Ill.1986).

Based upon this, contrary to the view of the majority, I conclude that the plain language of § 24–10–108 requiring the trial court to suspend discovery on all issues except immunity once it has been raised and then to decide the issue "on motion," is entirely consistent with the established rules of procedure to determine, by hearing and fact-finding if necessary, the existence of subject matter jurisdiction. And, this interpretation also accomplishes the legislative purpose of having the issue resolved promptly without unnecessary expenditure of funds.

Although they are inapplicable here, I also find instructive the 1992 amendments to § 24–10–108. The statute now reads, in pertinent part, that if a public entity raises sovereign immunity, *"prior to or after the commencement of discovery,* the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal."* Section 24–10–108, C.R.S. (1992 Cum.Supp.) (emphasis added). *See* Hearings on H.B. 1291 before the House Local Government Committee, 58th General Assembly, 2nd Session (February 17, 1992).

I recognize that, under this interpretation of § 24–10–108, the trial court cannot

postpone the jurisdictional issues until trial even if those questions are inextricably bound up with the merits of the case. *See Osborn v. United States*, 918 F.2d 724 (8th Cir.1990); *see also Guthrie v. Barda, supra.*

Further, I share the majority's concern and also recognize that it is not completely clear whether the trial court's preliminary factual findings made while denying the motion to dismiss, would be binding on the jury in their fact-finding role during the trial on the merits. *See Governor's Ranch Professional Center, Ltd. v. Mercy*, 793 P.2d 648 (Colo.App.1990) (doctrine of law of the case "applies to decisions of law, rather than to the resolution of factual questions" 793 P.2d at 650).

Nonetheless, I conclude that this is what the General Assembly intended. Accordingly, I find no flaw in the procedure used by the trial court and therefore dissent to the majority holding to the contrary. And, because I agree with the analysis in Part II of the opinion, and there is record support for the trial court's determination that Rabson was not negligent, I would affirm the judgment of the trial court dismissing the complaint.