JOSEPH CORN, APPELLANT, v. HARRY KAPLAN AND OCEAN GARAGE, INCORPORATED, A NEW JERSEY CORPORATION, RESPONDENTS.

Submitted February 11, 1927—Decided October 17, 1927.

1. The general rule is that a writ of error (now an appeal) will not lie to review the discharge of a rule to show cause, but where the granting or discharging of the rule is dispositive of the whole case, that action is tantamount to the rendering of a final judgment and an appeal from such action may be taken to an appellate court.

2. The function of the clerk of a court in taking the verdict of the jury, in the absence of the court, under section 160 of the Practice act (*Comp. Stat.*, *p.* 4103), is purely a ministerial one, that is, to receive the verdict as rendered by the jury in the first instance; and it is not within his province to determine whether or not the verdict is responsive to the issues involved in the case.

On appeal from the Supreme Court, whose *per curiam* is printed 3 *N. J. Mis. R.* 1215.

For the appellant, *Charles B. Clancy.*

For the respondents, *Herbert J. Hannoch.*

The opinion of the court was delivered by

KALISCH, J. This is an appeal from a judgment of the Supreme Court affirming a judgment of the Essex County Circuit Court, entered upon the verdict of a jury in favor of the defendant-respondent against the plaintiff-appellant.

The legal question raised upon the appeal in the Supreme Court is succinctly stated in its opinion, as follows: "The question sought to be reviewed is the action of the clerk in refusing to accept a verdict rendered by the jury, which resulted in the jury retiring for further consideration of the case after receiving from the clerk the pleadings in the case. The record contains a stipulation to the effect that the record to be submitted to this court shall contain only said stipulation, notice of appeal, complaint, answer, reply, judgment and transcript of the stenographer's notes on a return of a rule to show cause allowed by the trial judge to the defendant."

In determining the question the Supreme Court held: "If the proceedings in the Circuit Court amounted to a rule to show cause why a new trial should not be granted, the action of the judge was equivalent to discharging the rule. From this discretionary action of the court no appeal will lie. * * * The present action, as stated, was in the Circuit Court, we cannot consider the question raised if it be an appeal, because of the lack of an exception. From the action of

the trial judge in discharging the rule no appeal will lie for the reasons stated.  This leads us to an affirmance of the judgment of the Circuit Court."

In reaching this result from the record before it, the Supreme Court was obviously mistaken and fell into error.

While it is true, as disclosed by the record, that counsel for the plaintiff made a motion for a new trial on the ground that the first verdict should have been received by the clerk, it further appears that the trial judge in this connection said: "Regarding this as a motion to set aside the verdict because of irregularity, the motion will be denied, but without prejudice, to raise the same point upon appeal if it is decided to appeal from the evidence that has been introduced, and the return of the court can be made precisely in accordance with the testimony given by the clerk."

It is equally true that counsel for appellant took no formal exception to what the trial judge said, but from what occurred we do not perceive why counsel should have done so, since the trial court virtually anticipated an exception to his ruling when he told counsel that the motion would be denied without prejudice, if it was decided to appeal, thus practically granting an exception if an appeal was decided upon by counsel.  But, independently of this circumstance, a plaintiff is entitled to appeal from a record in a cause upon the ground of its irregularity, irrespective of the nature of the proceeding adopted, to attain that end in the court of the first instance.

In *Knight* v. *Cape May Sand Co.,* 83 *N. J. L.* 597, this court (at *p.* 599) said: "While the general legal rule is that a writ of error will not lie to review the granting or discharging of a rule to show cause, it has always been confined to cases where the action of the court was founded solely upon the exercise of its discretionary power, but not to a case where the effect of the granting or discharging of the rule is dispositive of the entire case—in that its action is tantamount to rendering a final judgment.  The mere fact that the proceeding was by a rule to show cause does not and cannot affect the real function of the writ of error, that is to bring the judgment record under review.  The

rule to show cause was simply an orderly procedure by which to bring to the knowledge of the court circumstances and facts under which the judgment was entered. The same object could have been obtained by an application to the court to vacate the judgment, without an intervening rule to show cause. It is clear that if there was a defect on the face of the judgment record and an application had been made to vacate it, and the court had, in the first instance granted a rule to show cause, and, subsequently, either discharged or made the rule absolute, the action of the court could not have operated to prevent the party prejudiced by such ruling to have the validity of such judgment brought under review by writ of error. And where the invalidity of the judgment can only be made to appear by matter *dehors* the record, as in the case *sub judice,* no different rule is logically applicable."

The appellant was entitled to appeal from the judgment entered against him, even though he took no formal exception to the action of the trial judge in refusing to set aside the judgment. It is an elementary legal proposition that error may be assigned on the record. This is the precise thing that has been done in the instant case. Where the error is not apparent upon the face of the record, but is alleged to exist in matters *dehors* the record and related thereto, the common practice is to apply to the reviewing tribunal for a writ of *certiorari* to bring before it in aid of the record the outbranches thereof. In the present case counsel instead of resorting to a writ of *certiorari* for the purpose indicated were relieved from pursuing such a course because they entered into a written stipulation that the "transcript of stenographer's notes on return of rule to set aside judgment, including findings and decision of the court," together with other matters stated in the stipulation shall be the statement of the case upon appeal.

This outbranch of the record was before the Supreme Court and is now before us for review. The Supreme Court refrained from dealing with the meritorious question involved upon the appeal, and practically dismissed the appeal upon the mistaken theory that it was an appeal from an ordinary rule to show cause, the granting or refusal of which

was in the discretion of the court, and, hence, was not appealable.

The outbranch of the record discloses that the clerk of the court was directed by the trial judge to receive such verdict as the jury may render in the absence of the court; that the jury returned into court, and, according to the testimony of the clerk, the following colloquy took place between him and the jury and its foreman: "I asked the jury if they had agreed upon a verdict" and they said "yes," and I said "Mr. Foreman, how do you find?" And they said, "We find for the plaintiff, and vote one-quarter of the three hundred and thirty shares of the stock, duly signed, and assign no money damage." I then said, "If you find for the plaintiff you must give me an amount." Then there were some questions asked, and I said, "I am not here to give instructions. I said you will have to retire. And then I handed the foreman the pleadings in the case, and they then retired, and sometime later they returned into the court with a verdict for the defendant. They didn't ask for the pleadings."

The action of the clerk was clearly irregular and improper. His function was purely a ministerial one—that is, to receive the verdict, as rendered by the jury, in the first instance. It was not within his province to determine whether or not the verdict was responsive to the issues involved in the cause, for, obviously, such determination calls for the exercise of a judicial function.

In *Folkner* v. *Hopkins,* 100 *N. J. L.* 189, Chief Justice Gummere, speaking for the Supreme Court (at *p.* 191), said: "At common law a verdict could only be rendered in the presence of the court—that is, in the presence of the judge or judges before whom the trial was had. *Davis* v. *Township of Delaware,* 41 *Id.* 57. This rule of the common law has been modified by section 160 of our Practice act (*Comp. Stat.,* p. 4103), which provides that, after the jury have gone from the bar to consider of their verdict 'the court may direct that the verdict be taken by the clerk in open court in the absence of the judge, and may order that the court remain open for that purpose.' The power of the clerk under the conditions named is strictly limited by the statute, and

that is to *take* such verdict as the jury shall render, without regard to whether or not it is in accordance with the instructions delivered to that body by the court, and without regard to whether or not the finding can be legally justified. He is not vested by the statute with any judicial power, nor does the order of the court directing him to take the verdict attempt to confer such power upon him. It is no concern of his officially whether the verdict can be upheld, or whether or not judgment can be entered upon it. He cannot legally refuse to accept a verdict, but must 'take' it as rendered, and, if it is informal in its phrasing, but is susceptible of being molded by the court so as to conform with the issues raised by the pleadings, it is the function of the court to so deal with it. If it cannot be so molded, then, necessarily, a mistrial must be declared."

These views meet with our approval.

For the respondent it is further argued that there was no reversible error in the conduct of the clerk, since section 27 of the new Practice act of 1912 (*Pamph. L., p.* 382) provides: "No judgment shall be reversed or a new trial granted on the ground of misdirection, or the improper admission or exclusion of evidence, or for error as to matter of pleading or procedure, unless, after examination of the whole case, it shall appear that the error injuriously affected the substantial rights of a party," and that since it appeared that the plaintiff had a fair trial on the merits, the error alleged did not injuriously affect the substantial right of the plaintiff.

This contention is palpably unsound. The section is not applicable to a situation such as is presented here. To lend countenance to the unauthorized action of the clerk in refusing to receive the jury's verdict as first rendered, upon the theory that the appellant suffered no harm, would lead to incalculable mischief. It would tend to establish a dangerous and most pernicious precedent. For it is of vital importance, in order to preserve the orderly and salutary administration of the law, to protect the rights of litigants and to guard juries against improper influences being brought to bear upon their deliberations and actions in causes sub-

mitted to them for decision, that the common law rule, as modified by our statute, relating to juries and governing the reception of verdicts, should be rigorously adhered to. It is not a palliating nor sufficient answer that the act complained of was done without evil intent, or that the result as reached by the jury was harmless to the litigant complaining. It is the possibility of harm which must be guarded against.

Since the decision of the Supreme Court in the *Folkner Case, supra,* the case of *State* v. *Duvel,* 4 *N. J. Mis. R.* 719, came before this court, on appeal, from the Supreme Court, in which case a similar contention was made in that the irregularity complained of was harmless, namely, the reception by the clerk of a communication in writing from a jury asking for certain information, and the trial judge being absent, "the clerk communicated with the trial judge by telephone and was directed by him to answer the inquiry in accordance with answers given to the questions by the judge to the clerk over the telephone—the clerk taking down the answers in writing and by direction of the judge delivering this writing to the jury." It was conceded that the instructions dictated by the judge were correctly taken down by the clerk and given to the jury, and that such answers were a correct statement of the law. The Supreme Court, in a *per curiam* opinion (at *p.* 720), said: "We think that this procedure was so irregular and so likely to be prejudicial to a defendant and so charged with possibilities of harm and abuse as to require a reversal. All the authorities seem to require and insist upon judicial acts of this character being done and performed in open court." This judgment of the Supreme Court was affirmed on its opinion by this court. *Post, p.* 715.

For the reasons given the judgment of the Supreme Court, affirming the judgment of the Essex County Circuit Court, is reversed to the end that a *venire dc novo* may be awarded.

*For affirmance*—None.

*For reversal*—TRENCHARD, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.  11.