Argued April 3, 1967, affirmed April 17, 1968

SIBURG, *Respondent and Cross-Appellant, v.*
JOHNSON ET AL, *Cross-Respondents,*
BRUNELL ET AL, *Appellants.*
439 P. 2d 865

R. *Gene Smith*, Grants Pass, argued the cause for appellants Charles Brunell and Robert Gass, and cross-respondent, City of Grants Pass. With him on the briefs was Gene L. Brown, Grants Pass.

*Ervin B. Hogan*, Medford, argued the cause for respondent and cross-appellant, Kent Siburg. With

him on the brief were L. A. Merryman, and Frohn-mayer, Lowry and Deatherage, Medford.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

McALLISTER, J.

This is a damage action for personal injuries resulting from the collision in Grants Pass of a pickup in which plaintiff was riding and a city fire truck. The jury exonerated the driver of the pickup, but found for plaintiff against the fireman driving the truck and his superior officer who was riding in the cab with the driver.[1]

. Viewed in the light most favorable to the plaintiff, the evidence tends to prove the following facts.

The plaintiff Siburg was a passenger in a pickup truck being driven by defendant Johnson in a southerly direction on Sixth Street in Grants Pass. Plaintiff was seated on the right side and one Wesley Parks was seated in the middle. The pickup was equipped with two seat belts, Johnson was using one, but the passenger's seat belt was not in use.

Sixth Street was a one-way street, with four traffic lanes which carried the southbound traffic of Highway 99. As Johnson approached the intersection of D Street the traffic control signal was red for traffic on Sixth Street. Vehicles were stopped in each of the traffic lanes except the lane to the left of the center line in which Johnson was driving, which was clear.

---

[1] Judgments were entered at various stages of the case in favor of all the defendants except Brunell and Gass, who are the only appealing defendants. Plaintiff's cross-appeal is rendered moot by the affirmance of the judgment in his favor.

When Johnson was about 50 feet from the intersection, the traffic light turned green. Johnson had anticipated that the light would turn green for him and had not reduced his speed appreciably as he approached the intersection, and was traveling between 20 and 25 miles per hour. Johnson sensed danger when he noticed that the vehicles stopped for the red light did not proceed when it turned green and placed his foot on the brake pedal. He had no recollection of applying the brakes, but skid marks left by the pickup extended from the north crosswalk to the point of impact. Neither Johnson nor Parks saw or heard the fire truck before the impact. Siburg had no recollection of any of the events leading up to the accident.

The fire truck was responding to a telephone call reporting a possible flue fire at a residence east of the scene of the accident.

The truck was being driven by the defendant Brunell, a fireman in the city fire department. Lieutenant Gass, who was in charge of the department in the absence of the fire chief, was riding in the cab with Brunell. The truck was traveling east on D Street as it approached the intersection of Sixth. Both Brunell and Gass saw the traffic light turn from green to yellow when the truck was west of Sixth Street a distance estimated from 50 to 150 feet. Gass realized that the light would be red before the truck cleared the intersection. Gass testified that the fire truck slowed and then accelerated as it approached the intersection. Brunell testified that he had his foot on the brake as he approached the intersection, but had his foot back on the throttle as he entered the intersection. According to various witnesses the speed of the truck as it entered the intersection was from 15 to 40 miles per hour. As a result of the accident, plaintiff

sustained multiple injuries which resulted in his permanent and total disability.

Defendants' brief contains numerous assignments of error, which raise the following principal questions:

(1) Was there sufficient evidence to support a finding by the jury that the siren on the fire truck was not sounded as it approached and entered the intersection?

(2) Did Lieutenant Gass have any duty with reference to the operation of the fire truck while he was riding in the cab alongside the driver Brunell?

(3) Is the duty of a driver of an emergency vehicle limited to the sounding of a siren and the display of the required lights, or does he have a duty to drive with reasonable care for the safety of all persons using the highway?

(4) Is a passenger in a motor vehicle who fails to fasten an available seat belt guilty of contributory negligence, and if so, did the evidence in this case make a jury question on this issue?

■ There was a conflict in the testimony as to whether the siren on the fire truck was sounded, and if so, for how long. Most of the witnesses testified that the siren was being sounded at the time of the accident and had been sounded for a considerable time prior thereto. However, one witness testified that she watched the fire truck for about two blocks before it reached Sixth Street, and although she was listening for the siren, she did not hear it.[2] No siren was

---

[2] [Lillian Shoemaker on cross examination]

"A  I had rolled the window down when I saw the red lights flashing after I pulled over, because I wanted to hear the siren, so I could see what they were doing.

"Q  Did you hear a siren?

"A  I didn't hear a siren.

"Q  Did you ever hear a siren?

"A  I never heard a siren at all, because I would have followed it, even though I know I was wrong."

heard by the defendant Johnson, or the witness Parks who was riding in the pickup. We hold that there was sufficient evidence to support a finding by the jury that the siren was not being sounded as the fire truck approached and entered the intersection.

We turn next to the question of Lieutenant Gass's personal liability for the alleged negligent operation of the fire truck. Plaintiff's complaint charged both Lieutenant Gass and the driver, Brunell, with negligent operation of the fire truck in the usual particulars, i.e., excessive speed, inadequate lookout and control, failure to stop for the traffic light, and failure to yield the right of way. Lieutenant Gass testified that he was in charge of the fire truck when the collision occurred, and that the driver of the truck was under his direction and control.

The law is well settled that the negligence of the driver, Brunell, cannot be imputed to Lieutenant Gass, and that Lieutenant Gass is not liable for Brunell's negligence on any theory of vicarious responsibility. The liability of a superior servant such as Lieutenant Gass must be predicated on his own negligence in failing to exercise his right to control a driver who is driving in a negligent manner. The leading case is *Dowler v. Johnson,* 225 NY 39, 121 NE 487-488, 3 ALR 146 (1918), where in an opinion written by Mr. Justice Cardozo the court said:

"* * * We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they co-operate in the act complained of, or direct or encourage it. * * * That is at least the general rule, and, if it is subject to any other qualifications, they are not now material. But here the very question is whether the defendant did direct

or encourage the negligent act or personally co-operate in it. Undoubtedly he is not liable for the negligence of the driver on the theory of *respondeat superior*. The relation between them was not that of master and servant. If he had been out of the car at the time of the accident, no one would suggest that he must answer for the driver's wrong. Even his presence in the car would be insufficient of itself and in all circumstances to charge him with liability. There must have been command or co-operation. [citing authorities] But ratification may be equivalent to command, and co-operation may be inferred from acquiescence where there is power to restrain. * * * There was the right to restrain here, for the driver was subject to the defendant's orders * * *; but the right is of no importance, unless the omission to exercise it was unreasonable. We cannot say whether the inference of such an omission is legitimate till the whole story has been told. We must see the whole picture. For the purpose of this appeal, it is enough that the defendant is not exonerated as of course because the man at the helm was not his servant. One cannot let oneself be driven at breakneck speed through city streets, and charge the whole guilt upon the driver who has done one's tacit bidding."

In a more recent case, *Nadeau v. Melin*, 260 Minn 369, 110 NW2d 29, 38 (1961), the Supreme Court of Minnesota after reviewing the authorities stated the prevailing rule as follows:

"It would seem, therefore, that the better rule, followed by a great majority of the courts which have considered the question, is that the negligence of the driver of an automobile is not to be imputed to a fellow employee riding with him, even though he has the right to control the manner of operation of the automobile, in the absence of a relationship which would establish vicarious liability. The right to control does have a vital bearing, however, on the determination of the independent negligence

of such passenger. Failure to exercise a control which he has, when it should have been exercised, may well constitute negligence on the part of the passenger, as well as other affirmative acts or failure to act when reasonable prudence would require it. * * *"

For similar statements see also, *Vogler v. Jones,* 199 Okl 156, 186 P2d 315 (1947) ; *Veek v. Tacoma Suburban Lines,* 49 Wash2d 584, 304 P2d 700, 704 (1956). Insofar as applicable, *Bartholomew v. Oregonian Pub. Co.,* 188 Or 407, 413, 216 P2d 257 (1950), is in accord with the foregoing authorities.

Defendants cite *Clough v. Schwartz,* 94 NH 138, 48 A2d 921 (1946), where it was held that the negligence of the driver of a fire truck could not be imputed to the plaintiff, a fire department lieutenant who was riding in the truck. We agree with what is there said about imputation of negligence between fellow servants. The case does not consider, however, any independent negligence of the superior servant for failure to exercise any right he may have had to control the driver. Whether the lieutenant had such a right or the opportunity to exercise it is not disclosed. In that respect the case is not apposite.

In the court below the plaintiff did not contend and does not contend here that the negligence of the driver, Brunell, could be imputed to Lieutenant Gass, or that Lieutenant Gass was vicariously liable. Plaintiff contends only that Lieutenant Gass was negligent under the circumstances of this case in failing to exercise his right to control the driver. We find no merit in the assignments of error which challenge the liability of Lieutenant Gass.

Defendants devote several assignments of error to the contention that the duty of the driver of an emer-

gency vehicle is limited to the sounding of a siren and a display of the required lights, and that he is excused from the general duty to drive with reasonable care for the safety of all persons using the highways.

An authorized emergency vehicle is defined in ORS 483.002 as follows:

> "(1) 'Authorized emergency vehicle,' means vehicles of the fire department * * * while being used for emergency purposes and displaying the required lights and sounding a siren or other audible warning."

■ The defendants first complain because the trial court did not instruct the jury that the fire truck as a matter of law was an authorized emergency vehicle. In view of the conflict in the evidence as to whether the siren on the fire truck was being sounded, the trial court properly let the jury decide whether the fire truck qualified as an authorized emergency vehicle as defined by the statute. We think no error was committed in that regard.

■ Assuming that the fire truck was an authorized emergency vehicle, defendants argue that the duty of the operator was limited to sounding the siren and displaying the required lights. This contention ignores the plain provisions of the applicable statutes. ORS 483.120 provides in pertinent part as follows:

> "(1) Subject to subsections (2), (3) and (4) of this section, the speeds designated in or pursuant to ORS 483.102 to 483.118 (basic rule, indicated speed, minimum speeds, truck speeds) and the provisions of ORS 483.130 (traffic control signals) and 483.136 (flashing signals) do not apply to authorized emergency vehicles. However, this subsection does not operate to relieve the driver or chauffeur of an authorized emergency vehicle from the duty

to drive with due regard for the safety of all persons using the highways.

"(2) (relating to ambulances)

"(3) (relating to ambulances)

"(4) No person shall drive an authorized emergency vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway, the hazard at intersections and any other conditions then existing."

[Matter in parenthesis supplied]

ORS 483.208 provides as follows:

"(1) Upon the approach of any authorized emergency vehicle giving audible signal by bell, siren, or exhaust whistle, the driver of every other vehicle shall yield the right of way and immediately drive to a position as near as possible and parallel to the righthand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police officer until the authorized emergency vehicle has passed.

"(2) (relating to street cars)

"(3) This section does not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor does it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right of way."

Defendants rely in large part on *Lucas v. City of Los Angeles,* 10 Cal2d 476, 75 P2d 599 (1938), but that case was overruled in *Torres v. City of Los Angeles,* 22 Cal Rptr 866, 372 P2d 906, 913, 914 (1962). In the latter case in construing statutory provisions similar to those contained in our Oregon statutes, the court said:

"We can attribute to the legislative intent, in

addition to the requirement of an adequate warning to others using the highway, the further requirement that the driver of an emergency vehicle exercise that degree of care which, under all the circumstances, would not impose upon others an unreasonable risk of harm. In short the statute exempts the employer of such a driver from liability for negligence attributable to his failure to comply with specified statutory provisions, but it does not in any manner purport to exempt the employer from liability due to negligence attributable to the driver's failure to maintain that standard of care imposed by the common law.  *  *  *

"That standard of conduct which is reasonable under all the circumstances must, of course, take into consideration the unusual circumstances confronting the driver of an emergency vehicle, that is, the emergency which necessitates immediate action and the duty imposed upon the driver to take reasonable, necessary measures to alleviate the emergency.  *  *  *"

For similar holdings by other courts see, *Johnson v. Brown,* 75 Nev 437, 345 P2d 754 (1959); *City of Baltimore v. Fire Insurance Salvage Corps,* 219 Md 75, 148 A2d 444, 82 ALR2d 306 (1959); *City of Kalamazoo v. Priest,* 331 Mich 43, 49 NW2d 52 (1951); *Montalto v. Fond du Lac County,* 272 Wis 552, 76 NW2d 279 (1956).

The duty of the driver of an authorized emergency vehicle is not limited to the sounding of a siren and the display of the required lights. He also must drive "with due regard for the safety of all persons using the highways." ORS 483.120. The trial court did not err in so instructing the jury.

■ The defendants Brunell and Gass in their separate answers each alleged that the plaintiff's injuries were proximately caused or contributed to by the negligence of the plaintiff in failing to use the seat belt

in the pickup "provided for his protection and safety." In their brief defendants allege that the trial court erred "in striking" defendants' charge of contributory negligence based on plaintiff's failure to use the seat belt in the pickup. In view of the trial court record, this assignment of error does not raise the questions argued in defendants' brief. Our attention has been called to no motion to strike the seat-belt specification of contributory negligence and to no ruling allowing any such motion.

The seat belt question was first raised when the defendant Johnson was asked whether his pickup was equipped with "passenger safety seat belts." An objection was made and there followed an extended colloquy between the court and counsel. It is true that the court at one time stated: "I'm ready to rule on it. As far as I'm concerned seat belts are out." However, this ruling was retracted and the court limited its ruling to merely sustaining the objection to the particular question asked.

Thereafter the defendants made an offer of proof which consisted of testimony of Johnson that his pickup was equipped with seat belts, that he was wearing his seat belt, and was not injured in the accident. He testified at first that the passenger's seat belt would embrace two passengers, and later said that he didn't know whether the belt would "go around two people."

Although the court nominally sustained the objection to the offer of proof, it did not sustain the objection to the testimony in its entirety. Thereafter the defendants proved by the witness Johnson, without objection, that his vehicle was equipped with a seat belt for the passengers. This was the precise question that had elicited the original objection, the

ruling of the court and the offer of proof. Johnson also testified that he was wearing the driver's seat belt and that except for being "knocked out" he was uninjured and required no medical treatment. It thus appears that in substance the entire offer of proof was received in evidence without objection. No further evidence about the seat belts was offered. Under the circumstances the assignment of error raises no question calling for a ruling by this court.

■ There is much talk in the briefs about whether the failure to use an available seat belt constitutes contributory negligence, but we do not reach that question and express no opinion about it. The courts which have considered the question have arrived at varying conclusions. *Lipscomb v. Diamiani,* 226 A2d 914 (Del 1967); *Brown v. Kendrick,* 192 So2d 49 (Fla App 1966); *Kavanagh v. Butorac,* 221 NE2d 824 (Ind App 1966); *Cierpisz v. Singleton,* 247 Md 215, 230 A2d 629 (1967); *Sams v. Sams,* 247 SoC 467, 148 SE2d 154, 15 ALR3d 1423 (1966); *Tom Brown Drilling Company v. Nieman,* 418 SW2d 337 (Tex Civ App 1967); *Bentzler v. Braun,* 34 Wis2d 362, 149 NW2d 626 (1967). In any event, the complete lack of evidence tending to prove a causal relationship between plaintiff's failure to use a seat belt and the extent of his injuries would preclude consideration of the defense in this case. The following cases agree on that point: *Cierpisz v. Singleton,* supra, 230 A2d at 635; *Tom Brown Drilling Company v. Nieman,* supra, 418 SW2d at 340; *Bentzler v. Braun,* supra, 149 NW2d at 638; Note, 52 Minn L Rev 918.

We have considered all assignments of error and think no comment about them is necessary except as contained herein.

The judgment is affirmed.