Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000402
22-SEP-2016
08:48 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

CIRILO POGOSO, Plaintiff-Appellant,
vs.
JEFF SARAE and CITY & COUNTY OF HONOLULU,
Defendants-Appellees,
and
JOHN DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS,
and/or OTHER ENTITIES 1-10, Defendants.

NO. CAAP-12-0000402

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1172-06(RAN))

SEPTEMBER 22, 2016

NAKAMURA, C.J., and FOLEY and REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiff-Appellant Cirilo Pogoso (Pogoso) filed a
lawsuit arising out of an automobile accident against Defendant-
Appellee Jeff Sarae (Sarae), a Honolulu Police Department
officer, and his employer, Defendant-Appellee City and County of
Honolulu (City). Sarae was on duty and pursuing another vehicle
to issue a traffic citation when the accident occurred. Pogoso's

Complaint alleged that the accident was caused by Sarae's negligence, which included Sarae's "reckless and careless" operation of his vehicle.

Sarae and the City (collectively, Defendants) filed a motion for summary judgment, arguing the Sarae was "entitled to immunity protection under the doctrine of conditional privilege." If applicable, this doctrine would shield Sarae from liability unless his actions were "motivated by malice and not by an otherwise proper purpose." Towse v. State, 64 Haw. 624, 632, 647 P.2d 696, 702 (1982). The Circuit Court of the First Circuit (Circuit Court)[1] granted Defendants' motion based on its conclusion that the doctrine of conditional privilege applied and there was no basis to find that Sarae had acted with malice.

On appeal, Pogoso argues, among other things, that the Circuit Court erred in applying the common law doctrine of conditional privilege because Sarae was subject to a duty of care prescribed by Hawaii Revised Statutes (HRS) § 291C-26 (2007) under the circumstances of this case. Pogoso further argues that there were genuine issues of material fact regarding whether Sarae had satisfied his statutory duty of care, and therefore, the Circuit Court erred in granting summary judgment in Defendants' favor.

As explained below, we conclude that the Circuit Court erred in applying the doctrine of conditional privilege because the Legislature's enactment of HRS § 291C-26 takes precedence over any common law conditional privilege that might otherwise apply to Sarae's conduct in this case. HRS § 291C-26 applies to drivers of "authorized emergency vehicle[s,]" which includes a police officer, like Sarae, driving a police car "when in the pursuit of an actual or suspected violator of the law[.]" HRS § 291C-26(a). HRS § 291C-26 grants such drivers a privilege to disregard certain traffic laws, such as the prohibition against speeding, running a red light, or making an improper turn. HRS

_____

[1] The Honorable Rhonda A. Nishimura presided.

2

§ 291C-26(b).  However, HRS § 291C-26 further provides that these exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor . . . protect the driver from the consequences of the driver's reckless disregard for the safety of others."  HRS § 291C-26(d).

We construe HRS § 291C-26(d) to impose a negligence duty of care, but a specialized one that must take into account the privilege granted to an emergency vehicle driver to disregard certain traffic laws, the obligation of other motorists to yield the right-of-way, and the nature of the emergency to which the driver is responding.  We further conclude that Pogoso raised genuine issues of material fact as to whether Sarae could be found liable under this specialized negligence standard.  We therefore vacate the Circuit Court's grant of summary judgment in favor of Defendants and remand the case for further proceedings.

BACKGROUND

I.

Pogoso's lawsuit was based on a traffic accident that occurred at the intersection of Paki and Kapahulu Avenues at approximately 12:25 a.m.  At this intersection, Paki Avenue has two westbound lanes and a single eastbound lane, and there are traffic lights at the intersection.  Pogoso was stopped in his car at the intersection in the left westbound lane of Paki Avenue.  Another motorist, Evan Anderson (Anderson), was behind Pogoso waiting to make a left turn onto Kapahulu Avenue.  Anderson drove around Pogoso into the right lane and made a left turn in front of Pogoso's car onto Kapahulu Avenue.

Sarae, who was on duty in a marked blue and white patrol car, was headed westbound on Paki Avenue.  Sarae saw Pogoso stopped at a red light, with Anderson directly behind Pogoso, in the left westbound lane of Paki Avenue.  Sarae observed Anderson make "an unsafe lane change" from the left lane to the right lane to go around Pogoso, and then make an improper

3

left turn onto Kapahulu Avenue.  Sarae pursued Anderson from the right westbound lane of Paki Avenue to issue him a traffic citation.  While Sarae was turning left in front of Pogoso in pursuit of Anderson, Sarae's patrol car and Pogoso's vehicle collided.

II.

Pogoso filed a Complaint in Circuit Court against Defendants Sarae and the City arising out of this incident.  In the Complaint, Pogoso alleged that he was involved in a traffic accident with Sarae that was caused by Sarae's "negligent acts and/or omissions," which included Sarae's "reckless and careless" operation of his motor vehicle.  Pogoso asserted that as a result of Sarae's negligent acts and omissions, Pogoso had sustained personal injuries and other damages for which he sought recovery.

Defendants filed a motion for summary judgment on Pogoso's Complaint, arguing that Sarae was entitled to immunity under the doctrine of conditional privilege.  Defendants asserted that under this doctrine, Sarae was immune from liability unless Pogoso could show by clear and convincing evidence that Sarae (1) was motivated by actual malice and (2) that he acted for an improper purpose.[2]  In support of their motion, Defendants submitted Sarae's declaration in which he stated that prior to the accident, he did not know Pogoso or Anderson and that he did not perform his duties "for any malicious or improper purpose." Defendants argued that because there was no genuine issue of material fact that Sarae had not acted with malice and for an improper purpose, Sarae was immune from liability based on his claim of conditional privilege.  Defendants further argued that

_____

[2] Defendants inaccurately described the requirements for the conditional privilege doctrine in their motion for summary judgment and in their brief on appeal by contending that it requires proof of (1) actual malice and (2) an improper purpose as two separate elements which must both be proven.  The conditional privilege doctrine requires proof that the government official was "motivated by malice and not by an otherwise proper purpose." Towse, 64 Haw. at 632, 647 P.2d at 702.  The lack of a proper purpose is part of the definition of malice, and proof of an improper purpose is not an additional element besides malice that must separately be proven.

if Sarae was immune from liability, then the City could not be held vicariously liable for his acts.

In opposing Defendants' motion for summary judgment, Pogoso argued that HRS § 291C-26(d), HRS § 291C-65(b) (2007), and Revised Ordinances of Honolulu (ROH) § 15-4.4(c) (1990) established the standard of care owed by Sarae under the circumstances of this case. Pogoso asserted that these legislative enactments superceded any conditional privilege that might otherwise apply and entitled him to recover upon a showing of negligence. Pogoso argued that there were genuine issues of fact regarding whether Sarae had met the applicable standard of care which precluded the Circuit Court from granting summary judgment in favor of Defendants.

### III.

In their summary judgment pleadings, the parties presented evidence that provided conflicting versions of the circumstances that caused the accident. During the hearing on Defendants' motion for summary judgment, the Circuit Court indicated that there appeared to be "inconsistencies in the individuals' versions or their perspective as to what happened" that would normally preclude summary judgment. However, the Circuit Court concluded that Sarae was entitled to qualified immunity under the conditional privilege doctrine. Based on its determination that Pogoso had failed to raise a genuine issue of material fact to contravene Sarae's declaration that Sarae was not motivated by malice, the Circuit Court granted Defendants' motion for summary judgment. The Circuit Court entered its Judgment on March 21, 2012, in favor of Defendants and against Pogoso as to Pogoso's Complaint, and this appeal followed.

### DISCUSSION

On appeal, Pogoso argues that the Circuit Court erred in granting summary judgment based on the doctrine of conditional privilege. Pogoso argues that provisions of the Statewide Traffic Code and the Traffic Code of the City and County of

Honolulu, HRS § 291C-26(d), HRS § 291C-65(b), and ROH 15-4.4(c), establish the applicable duty of care owed by Sarae under the circumstances of this case and supercede the common law doctrine of conditional privilege. He further argues that there were genuine issues of material fact under the negligence duty of care prescribed by these provisions which preclude summary judgment.

As explained below, we conclude that the Circuit Court erred in applying the doctrine of conditional privilege in granting summary judgment in favor of Defendants. We hold that HRS § 291C-26 takes precedence over any conditional privilege that might otherwise apply and that HRS § 291C-26(d) establishes the duty of care owed by Sarae under the circumstances of this case. We construe HRS § 291C-26(d) as imposing a specialized negligence standard that imposes a duty of reasonable care, but one that must take into account the privilege granted under HRS § 291C-26(b) to an emergency vehicle driver to disregard certain traffic laws, the obligation of other motorists to yield the right-of-way, and the nature of the emergency to which the driver is responding. In other words, a negligence standard that does not treat the emergency vehicle driver the same as an ordinary motorist, but focuses on what a reasonably prudent emergency vehicle driver would have done under the circumstances presented. We conclude that Pogoso raised genuine issues of material fact as to whether Sarae could be found liable under this standard. We therefore vacate the Circuit Court's grant of summary judgment and remand the case for further proceedings.

I.

The Circuit Court agreed with Defendants that the common law doctrine of conditional privilege protected Sarae from liability unless Pogoso could demonstrate that Sarae acted with malice. We conclude that in doing so, the Circuit Court erred.

The Hawai'i Supreme Court has recognized and established a qualified immunity for "non-judicial governmental officials, when acting in the performance of their public duty,"

6

which is referred to as a conditional privilege. Towse, 64 Haw. at 631, 647 P.2d at 702. This conditional privilege "effectively shields the official from liability" unless the injured party can demonstrate by clear and convincing proof "that the official had been motivated by malice and not by an otherwise proper purpose." Id. at 631-32, 647 P.2d at 702. The supreme court has indicated that for non-defamation cases, the term "malice" for purposes of the conditional privilege should be defined "in its ordinary and ususal sense" to mean "'the intent, without justification or excuse, to commit a wrongful act,' 'reckless disregard of the law or of a person's legal rights,' and 'ill will; wickedness of heart.'" See Awakuni v. Awana, 115 Hawaiʻi 126, 141, 165 P.3d 1027, 1042 (2007) (brackets omitted) (quoting Black's Law Dictionary 977 (8th ed. 2004)).[3/] This court has applied the conditional privilege in lawsuits alleging certain tortious conduct filed against police officers. See Woodard v. Tabanara, No. 30096, 2011 WL 2611288, at *2-3 (Hawaiʻi App. June 30, 2011) (SDO); Sanchez v. County of Kauaʻi, No. CAAP-14-0000903, 2015 WL 4546861 (Hawaiʻi App. July 28, 2015) (Mem.).

However, the conditional privilege is a common law doctrine. The law is clear that legislative enactments have priority over and supercede the common law. In re Water Use Permit Applications, 94 Hawaiʻi 97, 130, 9 P.3d 409, 442 (2000) ("The legislature may, subject to the constitution, modify or abrogate common law rules by statute."); Fujioka v. Kam, 55 Haw. 7, 10, 514 P.2d 568, 570 (1973) ("[O]ur state legislature may, by

---

[3/] In Awakuni, the Hawaiʻi Supreme Court recognized that the "reasonable person" test for determining malice, which was applied in Towse, "clearly was intended for purposes of analyzing the [conditional] privilege in a claim for defamation[.]" Awakuni, 115 Hawaiʻi at 141, 165 P.3d at 1042. The supreme court in Awakuni concluded that it had adopted the "reasonable person" test for malice "for use in the defamation context[,]" and it did not apply that test in Awakuni, which was a non-defamation case. Id. Based on Awakuni, this court and the United States District Court for the District of Hawaiʻi have used the definition of malice in "its ordinary and usual sense" in determining whether the conditional privilege applied in non-defamation cases. See Sanchez v. County of Kauaʻi, CAAP-14-0000903, 2015 WL 4546861, at *3 (Hawaiʻi App. Jul. 28, 2015); Wereb v. Maui County, 727 F. Supp. 2d 898, 924 (D. Haw. 2010).

legislative act, change or entirely abrogate common law rules through its exercise of the legislative power under the Hawaii State Constitution[.]"); Saranillio v. Silva, 78 Hawai'i 1, 13, 889 P.2d 685, 697 (1995) ("[W]e are constrained to give effect to the plain meaning of the statute [that is consistent with the legislative purpose], even if it results in the derogation of a common law rule.").

We conclude that HRS § 291C-26 supercedes and takes precedence over any conditional privilege that might otherwise apply to Sarae and that HRS § 291C-26 establishes the duty of care owed by Sarae under the circumstances of this case.[4] In enacting HRS § 291C-26, the Legislature clearly intended to establish standards that govern and control the activities of emergency vehicle drivers, including the conduct engaged in by Sarae in this case. HRS 291C-26[5] applies, in relevant part, to

---

[4] We assume, without deciding, that in the absence of legislative enactments, the conditional privilege doctrine would be applicable to Sarae's conduct in this case. We note, however, that even where there is no controlling legislative enactment, "[a] non-judicial government official is not afforded a [conditional] privilege in all cases[,]" but must be "acting in the performance of [his or her] public duty" and "must fall within the parameters of Barr v. Mateo, [360 U.S. 564, 573-74 (1959)][.]" Towse, 64 Haw. at 631 & n.9, 647 P.2d at 702 & n.9 (internal quotation marks and citation omitted). For example, in Slingluff v. State, 131 Hawai'i 239, 244-50, 317 P.3d 683, 688-94 (App. 2013), we held that prison doctors employed by the government are not shielded from medical malpractice claims by the conditional privilege doctrine because the rationale for establishing the privilege did not justify extending it to this situation. In deciding this case, we need not determine the scope of the conditional privilege doctrine.

[5] HRS § 291C-26, entitled "Authorized emergency vehicles," provides:

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm and vehicles used by police officers while in the performance of a police function, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

(1) Park or stand irrespective of the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(continued...)

"[t]he driver of an authorized emergency vehicle," which includes police vehicles,[6] "when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law[.]" HRS § 291C-26(a). The statute grants such emergency vehicle drivers the privilege to disregard certain traffic laws, such as those prohibiting speeding and running a red light, and as relevant to Sarae's conduct, laws "governing direction of movement or turning in specified directions[.]" HRS § 291C-26(b).

While exempting these drivers from the requirements of certain traffic laws, HRS § 291C-26 further states that its provisions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall [the] provisions protect the

_____

[5] (...continued)

   (3)   Exceed the maximum speed limits so long as the driver does not endanger life or property;

   (4)   Disregard regulations governing direction of movement or turning in specified directions;

   (5)   Drive on the shoulder and median of roadways; and

   (6)   Drive in controlled-access roadways, highways, and facilities.

   (c) The exemptions granted in subsection (b) to an authorized emergency vehicle shall apply only when the vehicle is making use of authorized audible and visual signals, except as otherwise provided by county ordinance. This subsection shall not apply to police vehicles.

   (d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall those provisions protect the driver from the consequences of the driver's reckless disregard for the safety of others.

[6] At the time relevant to this case, the term "authorized emergency vehicle" was defined to include

fire department vehicles, police vehicles, ambulances, ocean safety vehicles, public safety law enforcement vehicles, and conservation and resources enforcement vehicles authorized and approved pursuant to section 291-31.5 that are publicly owned and other publicly or privately owned vehicles designated as such by a county council.

HRS § 291C-1 (2007).

driver from the consequences of the driver's reckless disregard for the safety of others." HRS § 291C-26(d). Because HRS § 291C-26 evinces the Legislature's clear purpose to establish the standards applicable to Sarae's conduct in this case, HRS § 291C-26 trumps any common law conditional privilege that would otherwise apply. See Morais v. Yee, 648 A.2d 405, 410 (Vt. 1994) (holding that where the Vermont Legislature enacted a statute similar to HRS § 291C-26, which established a statutory duty and liability for a breach of that duty for drivers of authorized emergency vehicles, the judicially created doctrine of qualified immunity did not apply). Accordingly, the Circuit Court erred in applying the doctrine of conditional privilege, instead of the standards set forth in HRS § 291C-26, in granting summary judgment in favor of Defendants.

II.

A.

While the Legislature's intent to establish the duty of care owed by authorized emergency vehicle drivers is clear, the duty of care actually imposed is subject to debate and requires us to engage in statutory construction. When construing a statute,

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool."
>
> This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning."

10

Lingle v. Hawai'i Gov't Emps. Ass'n, 107 Hawai'i 178, 183, 111
P.3d 587, 592 (2005) (ellipsis points and brackets in original)
(quoting Guth v. Freeland, 96 Hawai'i 147, 150, 28 P.3d 982, 985
(2001)).  "Laws in pari materia, or upon the same subject matter,
shall be construed with reference to each other."  HRS § 1-16
(2009).

B.

Having determined that HRS § 291C-26 establishes the
duty of care owed by Sarae under the circumstances of this case,
we turn to the question of what is the duty of care prescribed by
the statute.  On this question, the statute is not a model of
clarity.  HRS § 291C-26(d) provides:

> The foregoing provisions [of HRS § 291C-26 (which provide
> exemptions from certain traffic laws)] shall not relieve the
> driver of an authorized emergency vehicle from the duty to
> drive with due regard for the safety of all persons, nor
> shall those provisions protect the driver from the
> consequences of the driver's reckless disregard for the
> safety of others.

(Emphases added).  Thus the statute refers to both (1) "the duty
to drive with due regard for the safety of all persons" and (2)
the absence of protection for the "reckless disregard for the
safety of others."

HRS § 291C-26 is part of Hawai'i's Statewide Traffic
Code and adopted language from the Uniform Vehicle Code.[2/]
Numerous other states that, like Hawai'i, adopted traffic codes
which incorporated provisions from the Uniform Vehicle Code
enacted statutes with language nearly identical or very similar
to HRS § 291C-26(d).  Courts in other states have struggled with
the question of exactly what standard of care is imposed by their
statute.  These courts have come to a variety of conclusions,
with the major division being between a negligence standard based

---

[2/] Hawai'i adopted a statewide traffic code, which incorporated
provisions from the Uniform Vehicle Code, to bring Hawai'i in conformance with
the Federal Highway Safety Program Standard on Codes and Laws.  See State v.
Chen, 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App. 1994) (citing H. Stand.
Comm. Rep. No. 157, in 1971 House Journal, at 742; S. Stand. Comm. Rep. No.
685, in 1971 Senate Journal, at 1102).  The legislative history of HRS § 291C-
26 does not provide any significant insight on how to interpret HRS § 291C-
26(d).

11

on the "due regard" language and a recklessness standard based on the "reckless disregard" language.

A significant number of states have construed their statute to impose a negligence standard of care. E.g., City of Baltimore v. Fire Ins. Salvage Corps, 148 A.2d 444, 446-48 (Md. 1959); Stenberg v. Neel, 613 P.2d 1007, 1009-10 (Mont. 1980); Mason v. Bitton, 534 P.2d 1360, 1362-64 (Wash. 1975) (en banc); City of Little Rock v. Weber, 767 S.W.2d 529, 532-33 (Ark. 1989); Day v. State ex rel. Utah Dep't. of Public Safety, 980 P.2d 1171, 1176-81 (Utah 1999); see also Brummett v. County of Sacremento, 582 P.2d 952, 955-56 (Cal. 1978). On the other hand, a significant number of states have also construed their statute to impose a recklessness standard of care. E.g., Saarinen v. Kerr, 644 N.E.2d 988, 990-93 (N.Y. 1994); Rochon v. State, 862 A.2d 801, 803-06 (Vt. 2004); City of Amarillo v. Martin, 971 S.W.2d 426, 428-32 (Tex. 1998); Robbins v. City of Wichita, 172 P.3d 1187, 1193, 1195-98 (Kan. 2007).

The basic policy considerations associated with the choice between the negligence and recklessness standards are: (1) the need to safeguard the public and compensate victims, emphasized by those who favor the negligence standard; and (2) the need to prevent the risk of civil liability from deterring emergency personnel and police officers from acting decisively and resolutely in performing their jobs, emphasized by those who favor the recklessness standard. The policy choice is one that is ultimately controlled by the Legislature, which may amend the statute if it disagrees with our interpretation of HRS § 291C-26(d).

C.

We construe HRS § 291C-26(d) to impose a negligence standard of care, joining a significant number of states that have reached this result. See Martin, 971 S.W.2d at 429 (stating that "most courts have interpreted provisions [with language like HRS § 291C-26(d)] to impose liability for negligence"). We

12

conclude that this interpretation is the most natural reading of the statutory language, as the phrase "due regard" is typically construed as imposing a negligence standard. See Fire Ins. Salvage, 148 A.2d at 447; Stenberg, 613 P.2d at 1009-10; Day, 980 P.2d at 1176-77; Weber, 767 S.W.2d at 532-33; Maple v. City of Omaha, 384 N.W.2d 254, 261-62 (Neb. 1986).[8]

The negligence standard is more compatible than the recklessness standard with the Legislature's emphasis on safety concerns in granting emergency vehicle drivers a limited privilege to disregard certain traffic laws. For example, while HRS § 291C-26 grants the driver of an emergency vehicle the privilege to "[e]xceed the maximum speed limits[,]" the statute restricts that privilege by only allowing it to be used "so long as the driver does not endanger life or property[.]" HRS § 291C-26(b)(3). Similarly, the emergency vehicle driver's privilege to "[p]roceed past a red stop signal or stop sign," can only be exercised "after slowing down as may be necessary for safe operation[.]" HRS § 291C-26(b)(2). In addition, HRS § 291C-65,[9] a related provision of the Statewide Traffic Code, requires other

---

[8] Indeed, even courts that have ultimately construed their statute to impose a recklessness standard have indicated (by their analysis) that the phrase "due regard" is typically construed to impose a negligence standard. See Saarinen, 644 N.E.2d at 991-92; Rochon, 862 A.2d at 804-05.

[9] HRS § 291C-65, entitled "Operation of vehicles on approach of authorized emergency vehicles," provides:

> (a) Except as otherwise provided by county ordinance, upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position clear of any intersection and parallel to, and as close as possible to, the right hand edge or curb of the highway or the nearest edge or curb when the highway has multiple lanes or when the highway is a divided highway or one-way street and shall stop and remain in such position until the authorized emergency vehicle is passed, except as otherwise directed by a police officer.

> (b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

(Emphasis added.)

13

motorists to yield the right-of-way upon the approach of an authorized emergency vehicle making use of audible and visual signals. HRS § 291C-65 further provides, however, that "[t]his section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." HRS § 291C-65(b). These legislative expressions of concern with the need to protect public safety support our construction of HRS § 291C-26(d) as imposing a negligence standard, which is more protective of public safety than a recklessness standard.

HRS § 291C-65(b) is also noteworthy in that it refers to the duty of an emergency vehicle driver "to drive with due regard for the safety of all persons using the highway[,]" but does not contain any reference to the "reckless disregard for the safety of others." Reading HRS § 291C-26(d) together with HRS § 291C-65(b) supports our conclusion that the Legislature intended HRS § 291C-26(d) to impose a negligence standard of care. See Maple, 384 N.W.2d at 303-05 (reading provisions almost identical to HRS § 291C-26(d) and HRS § 291C-65(b) together in concluding that the Nebraska Legislature intended to impose a negligence standard of care).

Our reading of HRS § 291C-26(d) as imposing a negligence standard is also consistent with the standard of care imposed by the City and County of Honolulu in ROH § 15-4.4,[19] the

---

[19] ROH § 15-4.4, entitled "Exemptions to authorized emergency vehicles," provides:

(a) The provisions of this traffic code regulating the operation, parking and standing of vehicles shall apply to authorized emergency vehicles, as hereinbefore defined; except as follows: a driver when operating any such vehicle in an emergency, except when otherwise directed by a police officer may:

    (1) Park or stand notwithstanding the provisions of this traffic code;

    (2) Proceed past a red light or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(continued...)

City's counterpart to HRS § 291C-26. ROH § 15-4.4(c) expressly uses the term "ordinary negligence" rather than "due regard" in imposing duties on drivers of authorized emergency vehicles. Although a county ordinance cannot trump a state statute, the negligence duty of care adopted by the City in its ordinance on the same subject matter provides useful guidance and insight into the City's policy choice on this subject.

Finally, we conclude that the broad reach of HRS § 291C-26 supports our view that the Legislature intended to impose a negligence standard. HRS § 291C-26 applies not only to the typical emergency situations of drivers responding to an emergency call or fire alarm or police pursuing a law violator, but also applies to "vehicles used by police officers[11] while in the performance of a police function[.]" HRS § 291C-26(a). We conclude that the Legislature's expansion of HRS § 291C-26 beyond

---

[10] (...continued)

    (3)    Exceed the speed limits so long as he or she does not endanger life or property;

    (4)    Disregard regulations governing direction of movement or turning in specified directions so long as he or she does not endanger life or property.

(b)    The exemptions provided for herein with reference to the movement of an authorized emergency vehicle shall apply only when the driver of such vehicle sounds a siren, bell or exhaust whistle as may be reasonably necessary, and the vehicle displays a lighted red lamp, or in the case of the Honolulu police department only, a lighted blue lamp, visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle as a warning to others.

(c)    <u>The foregoing exemptions shall not, however, protect the driver of any such vehicle from the consequences of his or her ordinary negligence or reckless disregard of the safety and property rights of others</u>.

(Emphasis added.)

[11] The term "police officer" is defined to mean "every officer authorized to direct or regulate traffic or to make arrests for violations of traffic regulations." HRS § 291C-1.

typical emergency situations indicates that it intended the more conventional and customary negligence standard to apply.[12]

### D.

Although we conclude that the "due regard" language of HRS § 291C-26(d) imposes a negligence standard of care, we further conclude that it is a specialized negligence standard, one that must take into account the unique responsibilities of and circumstances faced by emergency vehicle drivers. The privilege granted to emergency vehicle drivers by HRS § 291C-26(b), which permits them to disregard certain traffic laws, recognizes the unique role and responsibilities of emergency vehicle drivers. Thus, the presumption of negligence that an ordinary motorist would face for violating traffic laws does not apply to an emergency vehicle driver who violates the laws specified in HRS § 291C-26(b) pursuant to the statutory privilege. See City of Sacramento v. Superior Court, 182 Cal. Rptr. 443, 448 (Cal. Ct. App. 1982) (stating that the purpose of a California statute providing traffic law exemptions to emergency vehicle drivers "is to avoid the presumption of negligence that arises from the violation of a safety rule or regulation").

In addition, HRS § 291C-65 requires other motorists to yield the right-of-way upon the approach of an authorized emergency vehicle making use of audible and visual signals. The obligation of other motorists to yield the right-of-way is a factor that must be considered in evaluating the reasonableness of the actions taken by an emergency vehicle driver.

---

[12] We note that some courts have justified their construction of their version of HRS § 291C-26(d) as imposing a recklessness standard by asserting that otherwise the "reckless disregard" language would be rendered surplusage. See Rochon, 862 A.2d at 804; Martin, 971 S.W.2d at 430. We do not find this analysis to be persuasive because under the same reasoning, construing the statute to impose a recklessness standard would render the "due regard" language surplusage. We read HRS § 291C-26(d) as establishing a negligence duty of care but also imposing liability for reckless conduct. We note that this appears to be no different than criminal statutes which often provide that an offense can be committed based on overlapping mental states with different degrees of culpability, namely, that the defendant can commit the offense by acting intentionally, knowingly, or recklessly.

Moreover, the unique responsibilities of and special circumstances confronting emergency vehicle drivers must be considered, including the nature of the emergency to which the driver is responding.

> That standard of conduct which is reasonable under all the circumstances must, of course, take into consideration the unusual circumstances confronting the driver of an emergency vehicle, that is, the emergency which necessitates immediate action and the duty imposed upon the driver to take reasonable, necessary measures to alleviate the emergency.

Siburg v. Johnson, 439 P.2d 865, 870 (Or. 1968) (internal quotation marks and citation omitted).

Accordingly, the negligence standard applicable to emergency vehicle drivers must take into account their privilege under HRS § 291C-26(b) to disregard certain traffic laws, the obligation of other motorists to yield the right-of-way, and the nature of the emergency to which the driver is responding. Under this specialized negligence standard, the conduct of an emergency vehicle driver in operating his or her vehicle is not "measured by exactly the same yardstick as the actions of the operators of conventional vehicles." Fire Ins. Salvage, 148 A.2d at 448. Rather,

> [t]he urgency of their missions demands that they respond to calls with celerity and as expeditiously as is reasonably possible. . . . When dealing with the operation of emergency vehicles, it is particularly appropriate to recognize that negligence and reasonable care are *relative* terms and their application depends upon the *situation* of the parties and the degree of care and vigilance which *circumstances* reasonably impose.

Id. In other words, in applying the "due regard" negligence standard imposed by HRS § 291C-26(d), the focus should be on what a reasonably prudent emergency vehicle driver would have done under the circumstances presented.

III.

Having determined that HRS § 291C-26(d) imposes a negligence standard of care, we address whether the Circuit Court's grant of summary judgment was appropriate. We review the grant of summary judgment *de novo* under the same standard

utilized by the Circuit Court. Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004); Iddings v. Mee-Lee, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996). The grant of summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Durette, 105 Hawai'i at 501, 100 P.3d at 71 (block quote format and citations omitted). The court "must not make credibility determinations" or resolve conflicting evidence in ruling on a motion for summary judgment. Lales v. Wholesale Motors Co., 133 Hawai'i 332, 359, 328 P.3d 341, 368 (2014).

In their summary judgment pleadings, the parties presented conflicting versions of the circumstances surrounding the accident and how it occurred. In opposing Defendants' motion for summary judgment, Pogoso submitted his declaration, which described the accident as being caused by Sarae "unexpectedly, and without any warning" "turn[ing] directly in front of me." Pogoso also stated that prior to the collision, Sarae did not activate his siren or display flashing lights. Pogoso's declaration stated in pertinent part:

> 3. On July 18, 2009, around 12:30 a.m., I was stopped at a red light in the left lane in the westbound direction of Paki Avenue at the intersection of Kapahulu Avenue. . . . As the light turned green, a red car [(Anderson's car)] in the right lane unexpectedly turned left in front of me right before I was going to drive straight onto the Ala Wai.[13/] After that happened, I slowly proceeded drove into the intersection when Officer Sarae unexpectedly, and without any warning, also veered in front of me from the right lane. Our vehicles collided.

---

[13/] In the westbound direction, Paki Avenue becomes Ala Wai Boulevard after the Kapahulu Avenue intersection.

> 4. Officer Sarae was operating a Honolulu Police Department car. I did not see Officer Sarae's vehicle until the collision.
>
> 5. On the date of the subject incident, and prior to the collision, Officer Sarae's vehicle only displayed illuminated blue lights but they were not flashing.
>
> 6. On the date of the subject incident, and prior to the collision, Officer Sarae's vehicle did not have his siren or any other noise sounding.
>
> 7. Officer Sarae turned directly in front of me without warning when my light was green, causing the collision.

On the other hand, in support of their motion for summary judgment, Defendants submitted Sarae's declaration and statements made by Anderson. In his declaration, Sarae stated that prior to the collision, he passed along the right side of Pogoso's vehicle with Sarae's "blue strobe light flashing and [his] siren operating in the chirping mode." When Pogoso's vehicle did not move, Sarae "slowly entered the intersection[,]" making sure he could enter the intersection safely before making his left turn. Sarae stated that as he entered the intersection and was making a left turn onto Kapahulu Avenue, Pogoso drove forward, striking Sarae's police vehicle and causing minor damage to the driver's side rear quarter panel area of Sarae's vehicle.

Defendants also submitted statements Anderson made after he was stopped by Sarae and in Anderson's deposition. According to Anderson, he was behind Pogoso's car on Paki Avenue waiting to make a left turn onto Kapahulu Avenue. Pogoso's vehicle was stopped on a green light and did not move forward even after the traffic light changed from red to green again. When the light turned green a third time, Anderson drove around Pogoso's vehicle, which remained stopped, by going into the right lane and then turned left into Kapahulu Avenue.

Anderson gave differing accounts of his recollection of Sarae's use of a siren and blue lights, stating that they came on "as soon as [Anderson] turned"; that he saw blue lights and heard a siren "right after" he turned; and that he heard a siren "within a couple seconds" after making the turn and less than 100

19

yards past the intersection. Anderson could not recall whether Sarae activated the strobe lights on his police vehicle. Anderson believed that Sarae was driving on Kapahulu Avenue prior to stopping Anderson and had not been behind Anderson on Paki Avenue.

At oral argument, Defendants' counsel conceded that if HRS § 291C-26(d) was applicable (rather than the conditional privilege) and was construed to impose a negligence duty of care, then the question of whether Sarae had violated his duty of care was a question for the jury. We agree with this concession. Given the conflicting evidence presented regarding the circumstances surrounding the accident and how it occurred, we conclude that there were genuine issues of material fact that precluded the grant of summary judgment. Accordingly, the Circuit Court erred in granting Defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's Judgment and remand the case for further proceedings consistent with this opinion.

On the briefs:

Melvin Y. Agena
(Law Offices of Melvin Y. Agena)
for Plaintiff-Appellant

John P. Moran
Deputy Corporation Counsel
City and County of Honolulu
for Defendants-Appellees

*Craig H. Nakamura*

*Daniel R. Foley*

*Lawrence M. Reifurth*